Docket No. 83687–Agenda 8–March 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDREW P. BOWEN, Appellant.

 Opinion filed August 6, 1998.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Andrew P. Bowen, was charged with aggravated criminal sexual assault (720 ILCS 5/12–14(b)(1) (West 1994)) following an alleged act of oral penetration upon D.M.P., then age three. Prior to trial, the State moved to allow into evidence a videotaped statement given by D.M.P. relating the events of the alleged assault. 725 ILCS 5/115–10 (West 1994). A hearing was held pursuant to section 115–10 of the Code of Criminal Procedure of 1963, after which the court determined that the time, content and circumstances of the videotape provided sufficient safeguards of reliability. 725 ILCS 5/115–10(b)(1) (West 1994). The court admitted the videotape, and, after a bench trial, found defendant guilty of aggravated sexual assault and sentenced him to nine years' imprisonment. Defendant appealed, contending that (1) the admission of the videotape was a violation of section 115–10 of the Illinois Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115–10 (West 1994)) or, alternatively, of his rights under the confrontation clause, and (2) the State failed to prove him guilty beyond a reasonable doubt. The appellate court disagreed and affirmed the conviction. 289 Ill. App. 3d 378. We granted defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)) and now affirm the appellate court.

I. BACKGROUND

The incident giving rise to defendant's conviction occurred in late spring or summer of 1992 while defendant was baby-sitting for D.M.P. and her brother Donnie, then age four. D.M.P., age 7 at the time of trial, was found qualified to testify and was the State's first witness. D.M.P testified that defendant used to baby-sit for her at her Aunt Vonnie's house. She was unable to recall what he looked like, or her own age when the incident occurred, but believed she was in kindergarten at the time. D.M.P. testified that on one occasion, while she and defendant were in the living room of Vonnie's house, defendant pulled down his pants and underpants and told her to “suck his private part” and instructed her not to tell her mother. D.M.P. testified that when this occurred, there were no other adults in the house, but that Donnie and Vonnie's son Derrick were in another part of the house. D.M.P. additionally testified that defendant “put his private part in [D.M.P.'s] private part.” D.M.P. indicated that she remembered a woman named Terri Allen and recalled talking to her about what happened; however, she could not recall a police officer named Rob Copley. On cross-examination, D.M.P. acknowledged that she said “no” when Terri Allen had asked her whether someone had put something in her “butt.” D.M.P. denied ever discussing the occurrence with her brother, but testified that she had spoken with her mother, Officer Copley, Terri Allen, and “Cathy” about it.

D.M.P.'s mother, Mary, testified that defendant, whom the children referred to as “Bow” or “Andy Bow,” had baby-sat for D.M.P. and Donnie on three occasions during May or June of 1992, while she attended classes. Two of these occasions were at the home of Mary's friend Yvonne Tucker, or “Vonnie.” Mary testified that she had planned to get defendant to baby-sit a fourth time; however, she changed her mind when they had gone to pick defendant up, and D.M.P., upon seeing defendant approaching them, began crying and then “got hysterical.” Mary indicated that D.M.P. calmed down later that night when she learned defendant was not going to baby-sit. After this incident, Mary ceased using defendant as a baby-sitter.

Mary testified that about one month after D.M.P. had cried upon seeing defendant, Mary, D.M.P. and Donnie were at a friend's house watching cartoons when D.M.P. suddenly revealed that “Andy Bow made her kiss his pee pee.” Mary indicated that after that, D.M.P. became upset and said nothing further. Mary testified that she failed to report this incident to anyone, because the attack had occurred over a month before, and she was unsure anyone could do anything about it. Mary indicated that since that time, D.M.P. had mentioned the incident on occasion, but always repeated the same sentence she said initially and never added any further information.

In January of 1995, D.M.P. and Donnie were placed in foster care for circumstances unrelated to this case. On March 29, 1995, family-support worker Laura Richmiller was driving the children for visitation with Mary when the children began arguing. Richmiller testified that Donnie said “so, [D.M.P.], you licked [defendant's] lizard,” to which D.M.P. responded “so, he made me do it.” The following day, Richmiller reported the statement to her supervisors. Police officer Robert Copley testified that on March 31, 1995, he had two separate discussions with D.M.P. concerning incidents between her and defendant: the first discussion took place at D.M.P.'s foster home, and the second was conducted at the police station. The second interview was videotaped, and was taken by Copley in the presence of Terri Allen, an investigator with the Department of Children and Family Services (DCFS). D.M.P. was six years old at the time of the interviews. According to Copley, D.M.P.'s statement of events in the first interview was substantially the same as the description she gave on the videotape; the only difference was that in the first interview D.M.P. had indicated that “pee” had come out of defendant's “area,” whereas on the tape, she denied this fact. Copley testified that in the first interview D.M.P. initially denied that anyone ever touched her private areas, and responded “I don't know” to some questions; however, after 5 to 10 minutes, she was able to “warm up” to them and then discussed the occurrence. Finally, Copley testified that D.M.P. was unable to identify defendant as the perpetrator in a photographic lineup shown to her.

During Copley's testimony, the videotape was admitted into evidence and played for the court. At its conclusion, Copley confirmed that it accurately reflected the entire statement taken from the child at the police station. On the videotape, D.M.P. accurately distinguished between a “good touch” and a “bad touch” and identified relevant parts of the male and female anatomy using dolls. She also used the dolls to illustrate the various physical positions of her and defendant during the alleged abuse. D.M.P. stated that “Andy Bow” had given her a bad touch more than once, at Vonnie's house and at another house. She could not recall precisely when it occurred, but stated that it was a long time ago. D.M.P. stated that “Bow” had put his “area” in her mouth, in her “behind,” and in her “area.” D.M.P. also insisted that “nothing came out” of Bow's “area” at that time. When asked how many times this occurred, D.M.P. responded 19 times. She indicated that her brother referred to a male “area” as a “lizard.”

On April 11, 1995, Copley brought defendant to the police station and apprised him of D.M.P.'s allegation of sexual assault. Copley testified that defendant initially denied ever touching D.M.P. other than to play games with her or change her diapers. Then, when confronted with D.M.P.'s precise statements, defendant responded that he could not recall whether such events had occurred or not. On April 22, 1995, defendant returned to the station and gave a tape-recorded statement in which he acknowledged sexual contact between him and D.M.P. In the tape defendant acknowledged baby-sitting for D.M.P. on three occasions, including at Vonnie's house. Defendant stated that during one of these times, he was stepping out of the shower when D.M.P. grabbed his penis and put it in her mouth for a second. He stated that his penis was erect but that he did not ejaculate. Defendant indicated that on another occasion, D.M.P. sat on his lap and “made a sled” by sliding up and down on his thighs and rubbing her “butt” against his penis. According to defendant, this occurred for about one or two minutes, before he removed D.M.P. from his lap. Defendant acknowledged it was possible that these events occurred in May 1992.

The defense presented the testimony of Vonnie Tucker and Theresa Sprinkle, a coworker of Tucker in May 1992, attempting to show that defendant did not baby-sit for D.M.P. at the times claimed by the prosecution. According to Tucker, after she married in March of 1992, defendant no longer baby-sat for her children or Mary's children in her home.

On appeal, the court first found there was sufficient evidence to support defendant's conviction. The court then determined that the videotape of D.M.P.'s statement was properly admitted under section 115–10 of the Code. The court found “no reasoned distinction between a videotape of a child's statements and a third person testifying verbatim to those same statements,” the latter being expressly allowed under section 115–10. 
Bowen
, 289 Ill. App. 3d at 388.

II. ANALYSIS

As a preliminary matter we must rule upon a motion brought by the State and taken with this case. In his reply brief, defendant asks us to consider a statute from another state which he maintains is an “excellent example” of legislation that allows for the introduction of videotaped statements of children in sexual abuse cases. The State has moved to strike this statutory reference on the basis that it asserted additional matter not raised by the arguments in the State's brief. 155 Ill. 2d R. 341(g). We deny the State's motion, but point out that defendant's reference to another state's statute lacks relevance to this case. Our task here is not to rewrite section 115–10 or to determine the best means to accomplish the purpose intended by our legislature in enacting that section. We merely ascertain whether the videotaping procedure was contemplated under our statute, and whether section 115–10 accomplished its purpose in a manner consistent with the confrontation clause. See 
California v. Green
, 399 U.S. 149, 155, 26 L. Ed. 2d 489, 495, 90 S. Ct. 1930, 1933 (1970). The reference to a foreign statute has no significant bearing on this determination.

We first consider defendant's contention that the videotape was erroneously admitted under section 115–10. The State contends that defendant has waived his arguments on this issue because he failed to raise specific objections at trial and in his post-trial motion. See 
People v. Miller
, 173 Ill. 2d 167, 191 (1996). Regardless of the waiver, however, we choose to address the merits of defendant's contentions.

A. Statutory Construction

First, defendant argues that the plain language of section 115–10 does not allow for the introduction of a videotaped version of the child's statement. Section 115–10 states:

“(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child *** of an out of court statement made by such child *** that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child *** describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual *** act perpetrated upon or against a child ***.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.” 725 ILCS 5/115–10 (West 1994).

Defendant argues that this section neither contemplates nor permits the introduction of corroborative statements in videotaped form because it does not expressly provide for such evidence. As support for this proposition, defendant contrasts section 115–10 with Code section 115–10.1 (725 ILCS 5/115–10.1 (West 1994)) and former section 106A–2 (Ill. Rev. Stat. 1987, ch. 38, par. 106A–2, repealed by Pub. Act 87–345, eff. January 1, 1992)), in which the legislature included specific language allowing evidence of videotaped statements. Accord 
People v. Mitchell
, 225 Ill. App. 3d 708, 717 (1992); but see 
People v. Peck
, 285 Ill. App. 3d 14, 20 (1996) (declining to follow 
Mitchell
 with regard to admissibility of child's audiotaped statements.)

In applying rules of statutory construction, we strive to give effect to the legislature's purpose in enacting the law. In order to facilitate this process, we endeavor to determine the objective the legislature intended to accomplish and the evils it sought to remedy. 
People v. Scharlau
, 141 Ill. 2d 180, 192 (1990). Initially, we find the comparison of section 115–10 with sections 115–10.1 and 106A–2 to be unavailing, because each of these sections pertains to different subject matter. Former section 106A–2, a “child shield” law found unconstitutional by this court in 
People v. Bastien
, 129 Ill. 2d 64 (1989), shares some common purposes with 115–10; nonetheless, while section 115–10 generally provides for admission of 
corroborative
 statements of child victims, the very purpose of former section 106A–2 was to establish a videotaping procedure for the child's statement or testimony in order to spare the child the trauma of relating the story in open court. See 
Bastien
, 129 Ill. 2d at 70. Unlike section 115–10, the explicit allowance for videotaping was an inherent part of section 106A–2.

The language of section 115–10 admits, in relevant part, “testimony of an out of court statement” made by the child presented through a witness who directly heard the child making the statement. 725 ILCS 5/115–10(a)(2) (West 1994). As long as the statement's reliability is established, and the child is under the age of 13, the statute permits the witness to testify to the details of the statement. 725 ILCS 5/115–10(a)(2) (West 1994). Of course, he may then be cross-examined concerning the circumstances surrounding the statement. We find that the mere omission from section 115–10 of an express provision for videotaping does not reflect an intention to completely bar videotaped evidence. We agree with the appellate court that, with regard to the impact on the defendant's rights, there is little difference between introducing the statement on videotape or allowing it to be recounted in detail through the testimony of a third party. Indeed, although this court has declined to read into section 115–10 a 
per
 
se
 requirement that all statements be prerecorded (
People v. Wittenmyer
, 151 Ill. 2d 175, 187-88 (1992)), the United States Supreme Court has recognized that videotaping such statements may well enhance their reliability (
Idaho v. Wright
, 497 U.S. 805, 818-19, 111 L. Ed. 2d 638, 654, 110 S. Ct. 3139, 3148 (1990)). Unlike typical hearsay, videotaping enables the trier of fact to observe firsthand the nature and suggestiveness of the questions posed to the child; the substance and subtleties of the child's responses; and the child's demeanor in giving those responses. See also 
Peck
, 285 Ill. App. 3d at 22. As with any other 
ex
 
parte
 statement, the videotape will be subject to the strictures of the confrontation clause. To the extent that 
Mitchell
 holds to the contrary, it is overruled.

B. Constitutionality of Section 115–10

Next, defendant argues that the court erred in admitting the videotaped statement when D.M.P. had already testified at trial. He maintains that the evidence was repetitive and untrustworthy. Although defendant does not directly challenge the constitutionality of section 115–10, his primary support for this argument is this court's holding in 
Bastien
, 129 Ill. 2d 64.

In 
Bastien
, this court addressed the constitutionality of former section 106A–2 under the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI), and the Illinois Constitution (Ill. Const. 1970, art. I, §8). Section 106A–2 authorized the court, upon motion of the State, to order the recording of the child's “statement or testimony” on film or videotape. The statute mandated that the defendant, counsel for both parties, and the court be present at the taping, but barred the defendant from cross-examining the child at that time. The recording then could be introduced at trial on the condition that, in relevant part, the child was “available” to testify at trial, and the defendant or his attorney was afforded the opportunity to cross-examine the child at trial. Ill. Rev. Stat. 1987, ch. 38, par. 106A–2.

The 
Bastien
 court found that section 106A–2 unnecessarily and impermissibly infringed upon a defendant's confrontation rights by precluding contemporaneous cross-examination of the alleged child victim. In reaching this conclusion, the 
Bastien
 court first noted that there had been no individualized determination that the child would be traumatized by testifying to the sexual abuse at trial, or that the videotape procedure was otherwise necessary to protect the child's well-being. See 
Coy v. Iowa
, 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988). The court then distinguished the case of 
California v. Green
, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), which upheld a statute providing a hearsay exception for prior statements inconsistent with the declarant's trial testimony, even though the statements were not subject to cross-examination when originally made. The 
Green
 Court analyzed the historical purpose of the confrontation clause and found, in relevant part, “good reason to conclude that the [clause] is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.” 
Green
, 399 U.S. at 158, 26 L. Ed. 2d at 497, 90 S. Ct. at 1935. This court held 
Green
 inapposite, finding that it applied strictly to prior statements that were inconsistent with the declarant's trial testimony. 
Bastien
, 129 Ill. 2d at 76-77. Finally, likening a videotaped statement under section 106A–2 to “former testimony” intended to replace live testimony at trial, this court held that, since section 106A–2 required that the child be made available for testimony and cross-examination in any case, there was simply no reason to rely upon the “ `weaker version,' ” namely, the out-of-court videotaped statement. 
Bastien
, 129 Ill. 2d at 78, quoting 
United States v. Inadi
, 475 U.S. 387, 394, 89 L. Ed. 2d 390, 398, 106 S. Ct. 1121, 1126 (1986).

We find that 
Bastien
 is not dispositive of this case, because of fundamental differences in both the provisions and purposes of section 115–10 and former section 106A–2.

As stated above, a main function of former section 106A–2 was to permit a child victim to testify by a recording and thereby shield him from having to relate the details of his story in the physical presence of the defendant and in the formality of a courtroom. Section 115–10, on the other hand, was enacted to provide for reliable, corroborating evidence of a child's “outcry” statement. 
People v. Holloway
, 177 Ill. 2d 1, 9 (1997). Importantly, unless a finding of unavailability is made, statements admitted under section 115–10 can never serve as substitutes for trial testimony, because section 115–10 makes the introduction of the statements expressly contingent upon the child's production for direct and cross-examination at trial. In addition, the mandate that the child actually testify at trial, rather than merely being made “available” for testimony as under section 106A–2, has been held to be of constitutional significance: the former requirement spares the defense from a “Catch 22” of either having to call the child itself and risk inflaming the jury against it, or forgo completely its right to cross-examine the child. See 
Lowery v. Collins
, 988 F.2d 1364, 1369-70 (5th Cir. 1993) (holding that child must actually testify in order to comply with 
Green
); 
Story v. Collins
, 920 F.2d 1247 (5th Cir. 1991). Finally, in further distinction to former section 106A–2, the hearsay statement is inadmissible under section 115–10 unless the court first determines that it was made under conditions assuring its trustworthiness.

As we recently observed in 
Holloway
, 177 Ill. 2d at 9, the hearsay exception of section 115–10 was a needed response to the difficulty of convicting persons accused of sexually assaulting children. It is well known that child witnesses, especially the very young, often lack the cognitive or language skills to effectively communicate instances of abuse at trial (
Holloway
, 177 Ill. 2d at 9), or may be impeded psychologically in their efforts to do so (
Holloway
, 177 Ill. 2d at 13-20 (Freeman, C.J., dissenting)). Section 115–10 alleviated such concerns by allowing for detailed corroborative evidence of the child's complaint about the incident to another individual.

The probative value of corroborating complaints in these cases, especially in videotaped form, has been widely recognized. Children may be subject to memory loss in the often prolonged period between the abuse and trial, and videotaping the child's account of abuse at the earliest opportunity preserves the account while it is still fresh in the child's memory; in addition, it allows for the examination of the conditions prevalent at the time of the child's initial complaint. See J. Montoya, 
Something Not So Funny Happened on the Way to Conviction: The Pretrial Interrogation of Child Witnesses
, 35 Ariz. L. Rev. 927, 940-41 (1993). A recording close in time to the first outcry, prior to any charges being filed, where feasible, also makes the statement less likely to be the product of suggestion or even manipulation by overzealous prosecutors, parents or caseworkers. 
Cf.
 35 Ariz. L. Rev. at 940-41; see also 
State v. Robinson
, 153 Ariz. 191, 204, 735 P.2d 801, 814 (1987). In general, the child's initial complaint of sexual abuse has been characterized as “ `often striking in its clarity and ring of truth.' ” 
Robinson
, 153 Ariz. at 202, 735 P.2d at 812, quoting Berliner & Barbieri, 
The Testimony of the Child Victim of Sexual Assault
, 40 J. Social Issues 125, 133 (1984); accord 
People v. Rocha
, 191 Ill. App. 3d 529, 542 (1989). The supreme courts of Arizona and Florida have even gone so far as to equate the reliability of statements of a child victim with those under the co-conspirator's exception, concluding that the child's statements are “valuable and trustworthy in part because they exude the naivete and curiosity of a small child, and were made in circumstances very different from interrogation or a criminal trial.” 
Robinson
, 153 Ariz. at 204, 735 P.2d at 814; accord 
Perez v. State
, 536 So. 2d 206, 209 n.5 (Fla. 1988) (observing that, as such, they “ `are usually irreplaceable as substantive evidence,' ” quoting 
Inadi
, 475 U.S. at 396, 89 L. Ed. 2d at 399, 106 S. Ct. at 1126). We do not wholeheartedly endorse the perspective of the Arizona and Florida supreme courts as expressed above; nonetheless, we do believe that, in contrast to the uncertain evidentiary value of statements admitted under former section 106A–2, an outcry statement taken under the right circumstances can constitute a highly valuable and trustworthy form of evidence.

Since our decision in 
Bastien
, the United States Supreme Court has had occasion to reiterate the requirements of the confrontation clause in the context of three cases involving the hearsay statements of child sexual abuse victims. See 
White v. Illinois
, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992); 
Maryland v. Craig
, 497 U.S. 836, 111 L. Ed. 2d 666, 110 S. Ct. 3157 (1990); 
Wright
, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139. The Court has long recognized that the clause guarantees neither an absolute right to face-to-face confrontation (
Craig
, 497 U.S. at 847, 111 L. Ed. 2d at 679-80, 110 S. Ct. at 3164), nor an absolute right to contemporaneous cross-examination (
Green
, 399 U.S. at 161-62, 26 L. Ed. 2d at 499, 90 S. Ct. at 1937; see also 
Dutton v. Evans
, 400 U.S. 74, 80, 27 L. Ed. 2d 213, 222, 91 S. Ct. 210, 215 (1970)). Moreover, in cases involving firmly rooted hearsay exceptions, the out-of-court statement is considered so inherently trustworthy and probative that it is admissible under the confrontation clause regardless of whether the declarant will be available to testify. 
White
, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736. Finally, the clause contemplates the opportunity for effective, but not perfect, cross-examination. 
Dutton
, 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210. Notwithstanding the literal meaning of the confrontation clause, the Court's mission in construing it is to effect a balance between competing interests: advancing a practical concern for the accuracy and integrity of the truth-seeking process, against every jurisdiction's strong interest in effective law enforcement. 
Ohio v. Roberts
, 448 U.S. 56, 64, 65 L. Ed. 2d 597, 606-07, 100 S. Ct. 2531, 2538 (1980). Recognizing this, the Court restated its “general approach” to determining whether hearsay statements meet the requirements of the confrontation clause, as follows: the Court observed that the clause operates in two separate ways to limit the range of admissible hearsay. First, in conformance with the preference for face-to-face accusation, it establishes a “rule of necessity.” In the usual case, including cases where prior cross-examination has occurred, “ `the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' ” 
Wright
, 497 U.S. at 814, 111 L. Ed. 2d at 651-52, 110 S. Ct. at 3146, quoting 
Roberts
, 448 U.S. at 65, 65 L. Ed. 2d at 607, 100 S. Ct. at 2538. Second, when a witness is proven to be unavailable, his statement may be admitted only if it bears sufficient “indicia of reliability.” Reliability may be inferred without further proof where the statement falls within a firmly rooted hearsay exception. In other cases, however, the evidence must be excluded, “ `at least absent a showing of particularized guarantees of trustworthiness.' ” 
Wright
, 497 U.S. at 814-15, 111 L. Ed. 2d at 651-52, 110 S. Ct. at 3146, quoting 
Roberts
, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

Many recent cases hold that the concerns of the confrontation clause are satisfied as long as the hearsay declarant, the alleged child victim, actually appears in court and testifies in person, and the trial furnishes an opportunity for effective cross-examination. See, 
e.g.
, 
United States v. N.B.
, 59 F.3d 771, 775 (8th Cir. 1995), citing 
Dolny v. Erickson
, 32 F.3d 381, 385 (8th Cir. 1994); 
Story v. Collins
, 920 F.2d 1247, 1255 (5th Cir. 1991); 
Jones v. Dugger
, 888 F.2d 1340, 1342-43 (11th Cir. 1989) (statement by videotape); 
Perez
, 536 So. 2d at 209. Such a conclusion would appear to find support in the analysis in 
Green
, 399 U.S. at 161, 26 L. Ed. 2d at 499, 90 S. Ct. at 1936, where the Court pointed out that “none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial.” Testimony at trial enhances the reliability of the statement by allowing for direct confrontation. 
Cf
. 
Craig
, 497 U.S. at 846-47, 111 L. Ed. 2d at 679, 110 S. Ct. at 3164. Moreover, several courts have upheld the admission of out-of-court statements by a child witness even though the child testified to substantially the same events at trial. See, 
e.g
., 
Jones
, 888 F.2d 1340 (following 
Green
); 
N.B.
, 59 F.3d 771; see also 
United States v. Shaw
, 824 F.2d 601, 609-10 (8th Cir. 1987). Other courts, on the other hand, decline to find such hearsay statements sufficiently reliable to preserve the right to confrontation, even though the child is available to testify at trial. See 
State v. Pilkey
, 776 S.W.2d 943 (Tenn. 1989).

Section 115–10 allows the child's statement only if the State either produces the child for testimony or shows the child to be unavailable. Regardless of whether this, standing alone, would satisfy the requirements of 
Wright
, the statute then goes further to require that the court make a threshold determination that the “time, content, and circumstances of the statement provide sufficient safeguards of reliability.” 725 ILCS 5/115–10(b)(1), (b)(2) (West 1994). After close consideration of the recent precedent of the United States Supreme Court, courts of other jurisdictions, and our appellate court, we are persuaded that the admission of the videotape, in this particular case, achieved the correct balance between the defendant's constitutional rights and the State's aim of proving its case. We emphasize that the admissibility of hearsay statements under section 115–10 is largely contingent upon the trial court's careful evaluation of the circumstances surrounding those statements. Such consideration occurred in this case.

Defendant also argues that D.M.P.'s videotaped statement was largely cumulative of her trial testimony. Although, as could be expected, some duplication did exist, there were also significant distinctions. In the videotape, D.M.P. provided greater detail concerning the offense, identifying her and defendant's actions using male and female dolls. There were also inconsistencies in D.M.P.'s two accounts, including her assertion in the tape that defendant had put his “area” in her “behind,” which was not repeated at trial. We believe that defendant had ample opportunity to explore these and other inconsistencies effectively on cross-examination.

C. The Videotape's Reliability

Defendant suggests that the videotape was unreliable because it included some allusive questioning. He does not identify any particular inquiries he believes were subjective or manipulative, and we, having reviewed the tape, fail to discern any such questions. We review the admission of evidence under section 115–10 under an abuse of discretion standard. 
People v. Zwart
, 151 Ill. 2d 37, 44 (1992). In determining the reliability of the child's hearsay statement, relevant factors include, but are not limited to, (1) the spontaneity and consistent repetition of the statement; (2) the mental state of the child in giving the statement; (3) the use of terminology not expected in a child of comparable age; and (4) the lack of a motive to fabricate. 
People v. West
, 158 Ill. 2d 155, 164 (1994); see also 
People v. Barger
, 251 Ill. App. 3d 448, 462 (1993).

Our central concern in this case was that the sexual assault of D.M.P. occurred around May of 1992, and her videotaped statement was not obtained until March 31, 1995, nearly three years thereafter. However, this was outweighed by the remaining circumstances of the statement. D.M.P.'s first outcry occurred spontaneously about one month after the alleged abuse, when, while watching cartoons, she suddenly revealed that “Andy Bow made her kiss his pee pee.” The child then became upset and would provide no further details. Mary also testified that prior to this time, but after the abuse, D.M.P. had begun crying and became “hysterical” upon seeing defendant. Mary admitted never reporting these incidents to anyone because she was not sure anything could be done. It was not until March 29, 1995, that caseworker Richmiller overheard Donnie teasing D.M.P. that D.M.P. had “licked [defendant's] lizard.” Richmiller reported this dialogue to supervisors the following day, and on March 31, 1995, the videotape was taken by Officer Copley. The interview appearing on the videotape was only the second comprehensive interview between authorities and the child, and was sufficiently objective to be trustworthy. D.M.P.'s statement to her mother was generally consistent with the comment overheard by Richmiller, and was in the language expected of a young child. There was neither an allegation nor evidence of any motive to fabricate on the part of either D.M.P.'s family, Officer Copley or the other caseworkers, nor was there any evidence of suggestive questioning by Copley or Terri Allen. Thus, notwithstanding the delay in reporting, the evidence was properly admitted.

The dissent by Justice McMorrow in this case points to a prior dissent in 
People v. Kerwin
, 159 Ill. 2d 436, 454-55 (1994) (McMorrow, J., dissenting), in support of the proposition that section 115–10 does not permit videotaped statements. However, 
Kerwin
 involved an earlier enactment of section 115–10 under which only the 
fact
 of the child's outcry was admissible, but not the details of the statement. See 
Kerwin
, 159 Ill. 2d at 453 (McMorrow, J., dissenting), citing 
People v. Holveck
, 141 Ill. 2d 84, 103-04 (1990). Since 
Kerwin
, section 115–10 has been amended to expressly allow introduction of the details of the child's statement. Thus, the rationale of the dissent in 
Kerwin
 on the admissibility of videotaped evidence is inapposite. In further contrast to 
Kerwin
, this case did not involve the admission of “two lengthy videotapes” depicting interviews which were the product of leading questions (
Kerwin
, 159 Ill. 2d at 453, 455 (McMorrow, J., dissenting)). Rather, the videotape here revealed no evidence of leading or suggestive questioning. Further, D.M.P.'s videotaped statement varied somewhat from her trial testimony, and could not be considered merely cumulative, as in 
Kerwin
.

Defendant also argues that the evidence failed to prove him guilty of oral penetration upon D.M.P. beyond a reasonable doubt. In particular, defendant asserts that D.M.P. was only three years old when the alleged abuse occurred, that D.M.P. and Mary could not pinpoint the month of the offense, and that there were missing details and inconsistencies in D.M.P.'s statement and testimony concerning the abuse. However, we find that these inconsistencies, which were brought out in defendant's cross-examination, were relatively minor and bore only upon the weight to be afforded the child's testimony. See 
Wittenmyer
, 151 Ill. 2d 175. We disagree with the assertion that Mary failed to establish the approximate date of the occurrence, and find that there was ample evidence, including from the testimony of defendant himself, demonstrating that the abuse occurred in May of 1992. Defendant has failed to show that the evidence was so improbable or unsatisfactory that it warranted reversal of his conviction. See 
People v. Eyler
, 133 Ill. 2d 173, 191 (1989). Thus, his claim fails.

III. CONCLUSION

Based upon the above analysis, we affirm the judgment of the appellate court.

Affirmed
.

JUSTICE BILANDIC, dissenting:

I dissent. I agree with Justice McMorrow that the language of section 115–10 does not permit the introduction of videotaped statements as corroborative complaints. Having reached that conclusion, I do not believe it is necessary to address the constitutionality of the admission of such statements.

JUSTICE NICKELS joins in this dissent.

JUSTICE McMORROW, also dissenting:

I respectfully dissent. I believe that the rules of statutory construction compel a finding that videotaped statements are not permitted under section 115–10 (725 ILCS 5/115–10 (West 1994)). I also believe that the consequences of the majority's mistaken interpretation of section 115–10 are a clear violation of defendant's sixth amendment rights and the improper admission of cumulative testimony.

I. Statutory Construction

Nowhere in the text of section 115–10 does the legislature permit the admission of “outcry statements” by videotape or any other electronic recording. Thus, by concluding that section 115–10 allows the introduction of the minor child's video statement, the majority breaches an elemental rule of statutory construction, namely, to give effect to the statute's plain and ordinary meaning. 
People v. Woodard
, 175 Ill. 2d 435, 443 (1997). Applying section 115–10 as written, moreover, is completely consistent with the majority's desire to promote the legislative intent animating the statute, since any inquiry into legislative intent must begin with the language of the statute. 
In re S.G.
, 175 Ill. 2d 471, 480 (1997); 
People v. Haynes
, 174 Ill. 2d 204, 222 (1996).

The majority states that comparisons of section 115–10 to section 115–10.1 (725 ILCS 5/115–10.1 (West 1994)) and former section 106A–2 of the criminal procedure code (Ill. Rev. Stat. 1987, ch. 38, par. 106A–2 (repealed by Public Act 87–345, eff. January 1, 1992)) add nothing to our construction of section 115–10 because section 106A–2 and section 115–10.1 “pertain to different subject matter.” I disagree. I find concurrent examination of these sections useful because they address overlapping subject matter. These comparisons, moreover, indicate that the legislature did not intend to permit introduction of videotaped statements pursuant to section 115–10.

Section 106A–2 allowed a trial court to order the videotaping of the statements or testimony of child victims of specified sexual offenses. Ill. Rev. Stat. 1987, ch. 38, pars. 106A–1, 106A–2 (repealed by Public Act 87–345, eff. January 1, 1992). As this court stated in 
People v. Bastien
, 129 Ill. 2d 64, 70 (1989), the purposes underlying section 106A–2 were to protect child witnesses from the potential trauma of testifying in open court and to compensate for the fear, confusion and forgetfulness that frequently impede a child's ability to testify in open court. 
Bastien
, 129 Ill. 2d at 70. Decisions construing section 115–10 agree that the difficulties inherent in having children testify also prompted the legislature to enact section 115–10. See 
People v. Holloway
, 177 Ill. 2d 1, 9 (1997) (“Problems in proof may result when the lesser developed cognitive and language skills that children have hinder them in adequately communicating the details of an assault”); 
People v. Peck
, 285 Ill. App. 3d 14, 20 (1996). In light of the common aims underpinning section 115–10 and section 106A–2, I cannot interpret section 115–10's silence on the question of videotaped testimony as mere oversight. See 
In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989
, 167 Ill. 2d 161, 168-69 (1995) (“Statutes should be construed in conjunction with other statutes addressing the same subject”). The legislature is presumed to know the contents of existing enactments (
State of Illinois v. Mikusch
, 138 Ill. 2d 242, 248 (1990)), and I can only conclude that the legislature purposefully excluded videotaped statements from the hearsay exception created in section 115–10.

Section 115–10.1, in turn, regulates the introduction of prior inconsistent statements in a criminal trial, including statements recorded on videotape (725 ILCS 5/115–10.1 (West 1994)). Like section 115–10, section 115–10.1 purports to create an exception to the rule against hearsay. Again, I submit that the General Assembly knew full well the difference between expressly sanctioning videotaped testimony, as it did in section 115–10.1, and failing to mention videotaping of statements at all, as occurred in section 115–10. As our appellate court stated in 
People v. Mitchell
, 225 Ill. App. 3d 708, 717 (1992), “It would have been a simple matter for the legislature to indicate that videotaped statements were admissible under section 115–10. The legislature did not do so. We must, therefore, conclude that section 115–10 *** does not contemplate or allow the admission of such evidence.”

II. Constitutionality of Section 115–10

My objection to the majority's overly expansive reading of section 115–10 is not merely academic. More important than the affront to rules of statutory construction rendered by the majority opinion is the fact the opinion condones a breach of defendant's sixth amendment rights. Indeed, we previously found the introduction of similar videotaped evidence an impermissible breach of the confrontation clause. See 
Bastien
, 129 Ill. 2d 64.

In 
Bastien
, we determined the constitutionality of section 106A–2 (Ill. Rev. Stat. 1987, ch. 38, par. 106A–2 (repealed by Public Act 87–345, eff. January 1, 1992)). That statute allowed a trial court to order the videotaping of the statement or testimony of a child victim of a sexual assault
. Bastien
, 129 Ill. 2d at 68-69. Section 106A–2 permitted counsel for both parties to be present as the child testified, but only the state's counsel could question the victim, and counsel could not use leading questions. 
Bastien
, 129 Ill. 2d at 69. The defendant could also attend the recording session and the court could rule on evidentiary objections. 
Bastien
, 129 Ill. 2d at 69; Ill. Rev. Stat. 1987, ch. 38, par. 106A–2(a). Further, section 106A–2 allowed introduction of the videotape into evidence provided, 
inter alia
, the child was available to testify at trial, subject to cross-examination by the defendant or the defendant's attorney. 
Bastien
, 129 Ill. 2d at 69.

This court found section 106A–2 unconstitutional. 
Bastien
, 129 Ill. 2d at 77. The court ruled that section 106A–2 deprived defendant of the right to confrontation by effectively prohibiting contemporaneous cross-examination of the child witness. 
Bastien
, 129 Ill. 2d at 77. The 
Bastien
 court recognized that several months could elapse between the videotaping and the trial. 
Bastien
, 129 Ill. 2d at 77. “During that time, the child undoubtedly will have contact with the prosecutor and the relatives who, consciously or unconsciously, may influence the child” (
Bastien
, 129 Ill. 2d at 77), with the result that any false testimony captured on tape will “ `harden and become unyielding to the blows of truth.' ” (
Bastien
, 129 Ill. 2d at 76-77, quoting 
California v. Green
, 399 U.S. 149, 159, 26 L. Ed. 2d 489, 497-98, 90 S. Ct. 1930, 1935-36 (1970)). Additionally, the court found no justification for reliance on videotaped testimony of a child if the statute also mandated that the child be available for trial and cross-examination at trial. 
Bastien
, 129 Ill. 2d at 78. From an evidentiary standpoint, the testimony captured on videotape was far inferior to live testimony at trial. 
Bastien
, 129 Ill. 2d at 78.

Section 115–10 allows a trial court to admit, as an exception to the bar against hearsay, out-of-court statements of a child “describing any complaint of [a physical or sexual act perpetrated on the child] or matter or detail pertaining to any act which is an element of an offense which is the subject of [the prosecution]” (725 ILCS 5/115–10(a)(2) (West 1994)). The scope of this hearsay exception is so broad as to be indistinguishable from the typical narrative of events usually elicited by direct examination at trial. Indeed, that is precisely the nature of the testimony admitted by videotape in this case. D.M.P. described her understanding of permissible and impermissible touching, and identified human anatomy on dolls. She used the dolls to describe acts of abuse allegedly performed on her, and described other details surrounding her contacts with defendant. She stated that these incidents occurred 19 times.

Notably, too, section 115–10 does not require that any out-of-court statement by the child be subject to cross-examination, so that, as in 
Bastien
, the videotaped testimony of D.M.P was not tested by simultaneous cross-examination. Under the authority of 
Bastien
, moreover, the fact that D.M.P. was at trial and cross-examined in the courtroom does not remove the taint of constitutional violations. 
Bastien
, 129 Ill. 2d at 78-79. Section 106A–2 required that the witness be available for cross-examination at trial, but this court found subsequent cross-examination an inadequate substitute for contemporaneous cross-examination. 
Bastien
, 129 Ill. 2d at 78-79. The court noted:

“ `Cross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just the right time, in just the right way. *** [C]ross-examination of a witness who is uncounseled between direct and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause and consult with his attorney.' ” 
Bastien
, 129 Ill. 2d at 79, quoting 
Perry v. Leeke
, 488 U.S. 272, 282, 102 L. Ed. 2d 624, 635, 109 S. Ct. 594, 601 (1989).

The majority contends that comparisons to 
Bastien
 are inapposite since section 106A–2 allowed admission of videotape in lieu of a child's testimony, while section 115–10 merely sanctions the admission of certain statements as an exception to the general rule barring hearsay at trial. For the purposes of the present appeal, this is a distinction without a difference. The 
Bastien
 court candidly identified the video testimony in that case as pure hearsay. 
Bastien
, 129 Ill. 2d at 74.

The majority also compares section 115–10 to the holding of 
Idaho v. Wright
, 497 U.S. 805, 814-15, 111 L. Ed. 2d 638, 651-52, 110 S. Ct. 3139, 3146 (1990), which states that admission of hearsay does not necessarily violate the confrontation clause, provided the proponent complies with the “unavailability rule” and provided the hearsay falls within one of the “well-rooted” hearsay exceptions or is tested for reliability under the totality of the circumstances surrounding the statement. The majority further observes that section 115–10 satisfies the unavailability rule, as well as the totality of the circumstances test put forth in 
Wright
. Accordingly, the majority suggests, hearsay, by videotape or otherwise, may be admitted pursuant to section 115–10 without violating the confrontation clause.

 While the “totality of the circumstances” test undoubtedly expands the scope of testimony admissible without breach of the confrontation clause, I believe that blind adherence to that rule can create anomalies like the one that confronts us today. The hearsay “exception” articulated in section 115–10 is so broad as to render the general rule barring hearsay meaningless. The exception, in other words, swallows the rule. Under section 115–10, a child witness' previously recorded testimony concerning a sexual assault, not subject to contemporaneous cross-examination, can be admitted against a criminal defendant. In 
Bastien
, this court found virtually identical facts constitutionally infirm. I believe that merely relabeling the video testimony as a “hearsay exception” not only exalts form over function, but also ignores the real consequences of this court's actions. While I do not advocate overruling 
Bastien
, it is only by doing so that we can avoid an inconsistency between the holding in 
Bastien
 and the result urged by the majority in the present appeal. I think the better course is to reaffirm 
Bastien
 and reverse the appellate and circuit courts here.

Lastly, the majority's opinion neglects to cure a dilemma I recognized in 
People v. Kerwin
, 159 Ill. 2d 436, 453-55 (1994) (McMorrow, J., dissenting), and which has repeated itself here. In 
Kerwin
, this court affirmed the defendant's conviction on three counts of aggravated sexual assault of a child. I concluded in dissent that defendant received ineffective assistance of counsel, in part due to counsel's failure to object to admission of the victim's videotaped statements pursuant to section 115–10. I urged in 
Kerwin
, as here, that section 115–10 does not, by its terms, allow introduction of videotaped hearsay statements. 
Kerwin
, 159 Ill. 2d at 454 (McMorrow, J., dissenting), citing 
People v. Mitchell
, 225 Ill. App. 3d 708, 716-19 (1992). Further, my reference to 
Kerwin
 is not invalidated by subsequent amendments to section 115–10, as the majority suggests. Although the statute has been amended several times since its enactment in 1983, at no time has section 115–10 permitted the admission of videotaped hearsay statements.

Additionally, I noted in 
Kerwin
 that the State “enjoyed the advantage of having [the victim] `testify' twice; once in the courtroom, under oath and subject to contemporaneous cross-examination, and then again in the form of the lengthy, open-ended format of the [videotaped interviews].” 
Kerwin
, 159 Ill. 2d at 455 (McMorrow, J., dissenting). The unsworn statements recorded on video were the product of sometimes leading questions and were not tested by contemporaneous cross-examination or by objections. 
Kerwin
, 159 Ill. 2d at 455 (McMorrow, J., dissenting). The videotape in 
Kerwin
 “injected a layer of cumulative and repetitive details *** not elicited in accordance with courtroom procedure.” 
Kerwin
, 159 Ill. 2d at 455 (McMorrow, J., dissenting).

In the case before us, the testimony introduced by video was in substantial and material part cumulative of D.M.P.'s testimony on the witness stand. Elicited without any of the procedural safeguards normally attending testimony in an adversarial proceeding, the admission of recorded statements served only to add, unfairly, heft to the State's case and to violate defendant's constitutional rights.