NOTICE
Decision filed 06/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240975-U

NO. 5-24-0975

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 18-CF-87 |
| | ) | |
| JASON L. HAMMOCK, | ) | Honorable |
| | ) | Denton W. Aud, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Sholar and Clarke concurred in the judgment.

**ORDER**

¶ 1     *Held*: Where the evidence was sufficient to support the defendant's conviction of predatory criminal sexual assault, where the trial court properly admitted evidence under 725 ILCS 5/115-10, and where the trial court properly admitted into evidence the defendant's entire noncustodial interview, which contained admissions, his convictions are affirmed.

¶ 2                                    I. BACKGROUND

¶ 3     On May 23, 2018, the defendant, Jason L. Hammock, was charged in Wayne County, Illinois, with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)) and two counts of criminal sexual abuse (*id.* § 11-1.50(a)(1)) against his daughters L.H. and A.H., both under the age of 13 at the time of the offenses. The State later amended the

1

charges, dismissing the two counts of criminal sexual abuse and adding language to the two counts of predatory criminal sexual assault.

¶ 4    On May 23, 2018, L.H., then 10 years old, reported to her school principal, April Smith, that her father, the defendant, had been sexually abusing her. Smith immediately contacted the school social worker, Beth Richards, and the Department of Children and Family Services (DCFS), as required by mandated reporter protocols.

¶ 5    A few days later, both girls were subsequently interviewed at the Amy Schulz Child Advocacy Center (CAC) by forensic interviewer Taylor Parker. These interviews were audio and video recorded. The investigation led to the defendant being interviewed by Detective Justin Titzer of the Fairfield Police Department. Detective Titzer transported the defendant to the police station, advised him of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and proceeded with a recorded interview. During the interview, the defendant admitted to touching both daughters' vaginas "over and under the clothes," and to other incriminating acts, though he later claimed these admissions were made under duress and were made solely to prevent his children from being placed into foster care. The defendant was subsequently charged with two counts of predatory criminal sexual assault of a child, and the case was set for jury trial.

¶ 6    On November 30, 2021, the State filed a motion to admit the CAC interviews as admissible hearsay statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2016)). The first part of that hearing took place on December 27, 2022. The second part occurred on February 21, 2023, after which the trial court entered an order granting the State's motion, ruling that "the statements' time and content were reliable for the hearsay motion." The defendant also filed a motion to suppress his statements to police, which was denied. With respect to the defendant's motion to suppress, the trial court entered a detailed 17-page order,

2

finding *inter alia* that the defendant was not in custody during the recorded interview at the Fairfield Police Department. The court noted that the defendant was not in handcuffs, was given a cigarette break, and was told several times that he was "not under arrest." The case proceeded to a jury trial, which produced the following testimony.

¶ 7    April Smith, the principal of the school L.H. and A.H. attended, described the events of May 23, 2018, in detail. She testified that L.H. "came right on in the door and was crying and convulsing." Smith said, "She was crying saying she needed to tell me something. But she was convulsing and sucking in air, like, she couldn't get her words out when she tried to tell me something." After calming L.H., Smith asked what was wrong. L.H. responded that she was "afraid to go home," and that "her father had touched her inappropriately and had asked for sexual interactions." Smith immediately called Beth Richards, the school social worker, and DCFS.

¶ 8    After the disclosure by L.H., Smith had a conversation with L.H.'s sister, A.H.:

"I told her that I was concerned about some things that her sister had told me. And I asked her if she had had any interactions with her father sexually or negative interactions at all. She said, yes, that she often wore baggy clothes to school. She didn't want her dad staring at her chest. She would take the baggy clothes off when she got to school and then put them back on and wear them back home. She said that the same things were happening to her that were happening to her sister."

Smith recounted that after the disclosures, she and Richards ensured the girls did not board the bus home and contacted DCFS and law enforcement. Smith stated, "We proceeded to release the girls into the care of their mother. We called the police to make a police report and made a hotline call to DCFS."

3

¶ 9    Beth Richards, the school social worker, corroborated Smith's account, describing her own interactions with L.H. Richards testified that she was asked to come to the principal's office and spoke with L.H., who "said that there was blood in her underwear." Richards asked L.H. if she knew anything about a menstrual cycle, and L.H. said no. Richards provided L.H. with a sanitary pad and later called her mother. Richards stated that on May 23, 2018, L.H. "said that the reason why she was bleeding that day was because her Dad had put her fing—his fingers inside of her." Richards did not ask further questions, explaining, "Because it—a DCFS call was already in place and we are not investigators. That is the role of DCFS. So once that call is made, there are—no other questions are asked."

¶ 10    Taylor Parker, the forensic interviewer at the CAC, testified, describing the process and content of her interviews with L.H. and A.H. Parker explained, "A forensic interview *** is designed to build rapport with the child, transition to the topic of concern, discuss those details, and then close out with a non-related interview topic ***. They also have things they can color with. They can bring a stuffed animal with them, whatever makes them most comfortable." Parker testified that during her interview, L.H. disclosed that her father had touched her vagina with his finger, including "inside." Parker also interviewed A.H., who stated that her father had touched her "no-no square" (her term for her vagina), including "inside" with his finger. The CAC interviews were admitted into evidence and published to the jury.

¶ 11    L.H., age 16 at trial, testified in detail about the abuse. She described the first incident as occurring when she was 10 years old:

"He asked me if I wanted to see what came out of his penis. And I was ten years old. I wasn't curious but I didn't want to tell my Dad no. So I—I said—I was, like, 'Sure.' So he

4

showed me what he came out of it. And he asked me to—to put my mouth on it. And I said, 'No.' "

¶ 12　L.H. recounted another incident: "I was sleeping and I woke up to his—him with his fingers inside of me." When asked to clarify, she said, "In my vagina." She further testified:

"He was, like, 'You know you like it.' And I was, 'No, I don't.' And then he—I think he was getting ready for school. He was waking us up. And usually it would be our Mom waking us up. But she might have stayed asleep by accident and not woke up to her alarm. But he—he was, like, 'You know you like it.' And I was like, 'No, I don't.' And he was, like, 'Well, it's time to get ready for school.' "

¶ 13　L.H. also described other incidents, including her father asking to smell her fingers and offering to show her "how to actually do that *** how to actually, like, make yourself feel good." She testified that she remembered "four main times" of abuse, all occurring in fourth grade or the summer before.

¶ 14　A.H., age 18 at trial, testified that she remembered two specific incidents involving her father. She described one incident on a couch:

"I woke up because I had a bad dream from my room. And I went downstairs to go to sleep on the couch. And my Dad was already laying there. Um, so I laid on the opposite side where his feet were on the couch. *** [N]ext thing I know, um, I feel—I feel his feet going up in between my legs or his foot. And, like, I can't wake up. I can't open my eyes and I feel paralyzed."

She also described waking up to her father's mouth on her nipple and being asked to lift her shirt so he could "cup" her breasts. A.H. did not remember digital-vaginal contact during her trial

5

testimony, but her CAC interview contained a detailed disclosure of such contact, including that her father had touched her "no-no square," including "inside" with his finger.

¶ 15    Detective Justin Titzer testified that he and Officer Jeff Taylor went to the defendant's residence and asked him to come to the police station for an interview. Detective Titzer stated that he gave the defendant his *Miranda* rights, the defendant signed the form acknowledging his rights, and the audio and video recording devices were turned on. The interview was admitted into evidence and published to the jury. During the interview, the defendant admitted to touching both daughters' vaginas "over and under the clothes." Detective Titzer testified that when he asked the defendant if he "touched both the older girls," the defendant responded, "I did." The defendant admitted to individually touching A.H. and L.H. Detective Titzer asked the defendant, "And then you touched their vagina?" The defendant answered, "Right." Detective Titzer asked if the defendant touched both the girls over and under the girls' panties, to which the defendant confirmed that he did. The defendant also stated, "I have been praying. I have been praying for this shit to leave my head, and honestly, I'm thinking this is God's answer."

¶ 16    The defendant testified in his own defense. He acknowledged making admissions during the police interview but claimed he did so under duress, believing that confessing would prevent his children from being placed into foster care. The defendant stated, "I just got to agree with it so that my kids do not get put into the foster system." He denied ever touching his daughters for sexual gratification.

¶ 17    The jury found the defendant guilty on both counts of predatory criminal sexual assault of a child. At sentencing on September 6, 2024, the court imposed the mandatory sentence of natural life imprisonment on both counts. Following the denial of his posttrial motion, the defendant timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19                        A. The Sufficiency of the Evidence

¶ 20    The defendant challenges the sufficiency of the evidence for only one of his convictions. The defendant argues that the State failed to prove that he inserted his finger in the vagina of A.H., which was required to support a conviction of predatory criminal sexual assault on that count.

¶ 21    In considering a challenge to the sufficiency of the evidence, the reviewing court determines, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virgina*, 443 U.S. 307, 319 (1979)). "The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 22    To sustain a conviction of predatory criminal sexual assault, the State must prove the following elements: that the defendant is a person "17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and: (1) the victim is under 13 years of age." 720 ILCS 5/11-1.40(a)(1) (West 2016). The defendant does not dispute proof of the elements concerning his and A.H.'s ages or that, if the act occurred, it would have been for sexual gratification. The defendant claims that since A.H. could not remember specific details of the sexual contact during her trial testimony, her CAC interview should have been excluded as inadmissible hearsay. The defendant fails to cite caselaw to support this claim.

¶ 23    Children who are victims of sexual abuse frequently experience difficulty recalling details years after the abuse occurred. Our supreme court has recognized that section 115-10 exists in part because videotaped statements preserve disclosures while events remain fresh in the child's memory. See *People v. Butler*, 2025 IL 130988, ¶ 36; *People v. Bowen*, 183 Ill. 2d 103, 115 (1998).

¶ 24    Further, the defendant admitted during his recorded interview that he touched both girls' vaginas over and under their clothing and underneath their panties. The jury was entitled to consider those admissions together with A.H.'s CAC interview. Viewing the totality of the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. Accordingly, the defendant's challenge to the sufficiency of the evidence fails.

¶ 25              B. Admission of Statements Under Section 115-10

¶ 26    The defendant next contends that the trial court erred in admitting the entire CAC interviews because they were inadmissible hearsay and, alternatively, that the trial court failed to redact uncharged conduct referenced in those interviews. First, we note that the State also filed a motion to admit other crimes based upon Smith's and Richards' testimonies and the CAC interviews, to which the defendant never objected. Second, while the defendant did reference both arguments in his motion for a new trial, he neither objected to their admission at trial nor requested the trial court to redact the alleged statements regarding uncharged conduct. It is well settled that failure to offer both a contemporaneous objection and raise the issue in a posttrial motion results in forfeiture. *People v. Johnson*, 218 Ill. 2d 125, 138 (2005). Therefore, the issue is forfeited. Forfeited issues can only be reviewed if a defendant can establish plain error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

8

¶ 27    Under the first prong of the plain error doctrine, the defendant bears the burden of establishing that a clear or obvious error occurred and the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Under the second prong, the defendant bears the burden of persuading the court that the alleged error was so serious that it denied a substantial right, such as the right to a fair trial by an impartial trier of fact. *Id.* at 613-14. Under either prong, the first step is determining whether a clear or obvious error occurred. *Id.*

¶ 28    Section 115-10 of the Code of Criminal Procedure of 1963 provides an exception to the hearsay rule for certain out-of-court statements made by child victims concerning sexual acts or conduct. 725 ILCS 5/115-10 (West 2016). The statute requires the trial court to determine whether "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," and whether the child testifies or is otherwise available as required. *Id.* § 115-10(b)(1); *Bowen*, 183 Ill. 2d at 115. The admission of such statements is reviewed for an abuse of discretion. *People v. Williams*, 193 Ill. 2d 306, 352 (2000). An abuse occurs only where the decision is arbitrary, fanciful, or unreasonable. *Id.*

¶ 29    Here, the trial court conducted the required hearing and determined that the time, content, and circumstances of the victims' statements provided sufficient safeguards of reliability. See 725 ILCS 5/115-10 (West 2016). The statements were made during professionally conducted forensic interviews shortly after the disclosures. Both victims testified at trial and were subject to cross-examination. Accordingly, we find nothing in the record to support the conclusion that the trial court abused its discretion by admitting the CAC interviews.

¶ 30    The defendant also argues that portions of the victims' CAC interviews included statements regarding uncharged conduct by the defendant, which were erroneously admitted into evidence.

9

We disagree. The trial court had discretion to admit contextual details that were intertwined with the charged acts and necessary to provide the jury with a coherent narrative. See *People v. Butler*, 2025 IL 130988, ¶ 36; *People v. Boling*, 2014 IL App (4th) 120634, ¶ 87. The evidence concerning additional conduct was admissible to explain the victims' disclosures and the course of the investigation. Accordingly, because the defendant failed to establish clear or obvious error, there is no plain error.

¶ 31                    C. Admission of the Defendant's Statements

¶ 32    The defendant next argues that the trial court erred in admitting his recorded statements, asserting that they were involuntary or, in the alternative, in violation of section 103-2.1 of the Code of Criminal Procedure of 1963 because two minutes of the 45-minute recorded interview was missing audio. See 725 ILCS 5/103-2.1 (West 2016). We disagree.

¶ 33    A confession is voluntary if, under the totality of the circumstances, the defendant's will was not overborne. *People v. Simpson*, 2015 IL 116512, ¶ 36. Relevant factors include the defendant's age, experience, the duration and circumstances of the interrogation, and the presence or absence of coercive police conduct. Whether a confession is voluntary depends on the totality of the circumstances. *Id.* ¶ 35. Relevant considerations include the defendant's age, intelligence, experience, the duration of the questioning, whether *Miranda* warnings were provided, and whether police used physical or psychological coercion.

¶ 34    The record supports the trial court's finding that the defendant was not in custody, and his statements were voluntary. Detective Titzer testified that the defendant voluntarily accompanied officers to the police station, agreed to speak with police, and never asked to terminate the interview. The 45-minute interview was electronically recorded, and only two minutes of audio are missing. Nothing in the record indicates threats, promises, physical abuse, or coercive tactics.

The defendant testified that he confessed because he believed doing so might help his children avoid being placed in foster care. However, the existence of internal personal motivations does not establish police coercion sufficient to render a confession involuntary. As to section 103-2.1, the presumption of inadmissibility applies only where a *custodial* interrogation is not electronically recorded. The trial court determined that the defendant was *not* in custody, and thus the statute does not apply. Moreover, even if the statute was applicable, the defendant's statement may still be admitted if found voluntary and reliable, which the trial court did. 725 ILCS 5/103-2.1(f) (West 2016). We therefore find no error in the admission of the defendant's statements.

¶ 35     Because, as set forth above, we find no errors on behalf of the trial court in the admission of the victims' CAC interviews or the defendant's statement, there is no reason to address the defendant's argument regarding ineffective assistance of counsel. Where the defendant fails to establish that any clear or obvious error occurred, he cannot establish first prong plain error or ineffective assistance of counsel. See *People v. White*, 2011 IL 109689, ¶ 134; *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 36                                III. CONCLUSION

¶ 37     For the above reasons, we affirm the defendant's convictions.


¶ 38     Affirmed.