THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE PINTA, Defendant-Appellant.

Second District   No. 2—90—0255

Opinion filed April 2, 1991.

Peter B. Nolte, of Sreenan & Cain, P.C., of Rockford, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Cynthia N. Schneider, and Martin P. Moltz, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, George Pinta, appeals his two convictions of battery under section 12—3(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)(2)) and raises two issues on appeal. The first issue is whether the trial court properly applied section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2)) in a prosecution for battery when it allowed the hearsay testimony of defendant's ex-wife regarding alleged sexual contact between defendant and the victims, his daughters. The second issue is whether defendant was proved guilty beyond a reasonable doubt of knowingly committing the offense of battery by touching the victims' groins when the alleged contact occurred during a tickling session initiated by the victims.

Defendant's ex-wife, Donna Hames, was the first witness called at the bench trial and testified over defendant's objection. Hames testified that while she and defendant were married, they had two daughters, J.P., age 8, and K.P., age 10. In March 1984, the couples' marriage was dissolved. Hames was granted legal custody of the children, and defendant had visitation rights every other weekend, alternate holidays, and Wednesday evenings. Defendant had the children on the weekend of November 26, 1989, and on the following Wednesday evening, the daughters were scheduled to visit defendant again.

Following an objection by defendant and legal arguments regarding the applicability of section 115—10 of the Code, the court permitted Hames to testify further. Hames testified that K.P. told her that she did not want to go with defendant because he scares her and touches her in her privates. When Hames asked her how he does that, K.P. explained that defendant starts off by tickling her and her sister and then tickles them under the arms and grabs their breasts. K.P. told Hames that at other times defendant had tickled their legs and touched their privates. Hames testified that K.P. told her that defendant does this to them a lot and, specifically, that he did it the weekend of November 26, 1989. J.P. also told Hames that defendant had touched her in the same spots. J.P. reported that during that weekend, defendant had held her tightly between her legs and would not let go. J.P. said that he did the same thing to K.P. The girls were fully clothed at the time of the alleged incident. After they told their mother this information, defendant arrived, and the girls went with him to the library.

On cross-examination, Hames admitted that, although her marriage had been dissolved in 1984, she and defendant were back in court in 1985 to litigate child support and visitation rights. In 1989, defendant had filed a petition alleging that Hames had interfered with his visitation rights, and a judge warned her that he could enter sanctions, including a change in custody, for her interference of withholding the Wednesday visitations.

The State next examined J.P., age eight, with leading questions. She answered "[n]o" to the questions of whether her mother had told her what to say in court and whether she was making anything up. J.P. testified that on November 26, she and her sister were playing at their father's house. At one time, defendant squeezed them between their legs by the knees. She asked him to stop squeezing, but he would not. Finally defendant let go, and J.P. went to the washroom because she could hardly breathe. J.P. testified that defendant had not been tickling her that day. The day defendant had been tickling her, she said, "[h]e tickled me under the arm and I think he accidentally got my chest." She was wearing clothes while she was tickled.

The prosecutor then gave J.P. a dressed, anatomically correct doll. She used the doll to show where defendant had tickled her. The prosecutor asked that the record reflect that the witness had indicated the breast portion of the doll. The court disagreed and stated for the record that she indicated under the armpit. J.P. then said defendant had touched her in another part, "Right by where I go to the washroom," and indicated the groin area of the doll, according to the prosecutor and the court. J.P. then demonstrated defendant's hand movements, which

was reflected in the record as a "grabbing motion." J.P. did not say anything to defendant about how she felt, although she felt "gross."

On cross-examination, J.P. stated that she and her sister often wrestled with their father, jumped on him, and tickled him. On the day in question, she and K.P. had jumped on him together, wrestled with him, and rolled all over. They were tickling him when he tickled them. After a while, they got tired and later went next door to play with a neighbor girl.

K.P., the next witness, responded that neither the prosecutor nor her mother had told her what to say in court. She testified that on November 26, 1989, she and J.P. were at defendant's house with defendant and his girlfriend, Karen. K.P., J.P. and defendant were watching television and then were playing on the floor, laughing, wrestling and tickling each other. K.P. used the doll to show where defendant tickled her. Over defendant's objection, the court let the record reflect that K.P. had indicated the crotch of the doll. She then explained that defendant had moved his hand while touching her between the legs, and she made an indication in court. K.P. testified that defendant tickled her and J.P. under the arm and the breast area. K.P. stated that she did not say anything to her father because she was scared of him. The court allowed K.P. to testify that defendant had touched her in those private parts on previous occasions.

On cross-examination, K.P. testified that on November 26, 1989, they were watching football on television. She stated that she and her sister often wrestled with their father just for fun. They would jump on him, wrestle, tickle and laugh. On redirect examination, K.P. stated that immediately after the tickling, J.P. had run to the bedroom because defendant had thrown her down in a scissor lock.

Karen Szilkowski had been defendant's girlfriend for two years. She testified that on November 26, 1989, she stood in the entranceway to the living room watching defendant and his two daughters. Defendant was watching the Bears football game on the television. K.P. came into the room and jumped on him and started tickling, as Karen had often seen her do. Defendant laughed and tickled back. Karen saw defendant's hands; he tickled the girl's rib-cage area and the outsides of her legs but nowhere else. J.P. then jumped in and started tickling both K.P. and defendant. Karen saw defendant touch J.P. on her back, her rib cage and the lower, outside part of her legs. Karen watched for two or three minutes, but missed seeing the end of their playing. Karen stated that the girls were laughing.

Defendant testified on his own behalf. He claimed that he was sitting on the floor watching the football game when K.P. came into the

room and started wrestling with him as she had done many times. J.P. then jumped into the play. The three tickled each other all over and laughed. The girls were fully clothed during the incident. Defendant testified that when K.P. jumped on him, he threw her off, and she rolled on the floor. Defendant then tickled her feet, and when J.P. jumped on him, he threw her off too. Defendant stated that one girl would be back on him as soon as he threw the other one off. Defendant testified that he tickled J.P. under the arms, under the neck and on the inner thigh by the knee where the girls were ticklish. Defendant stated that the three of them played for about five minutes and were laughing when they ended. The girls left the room and subsequently played with the neighbor. Defendant testified that the girls never said anything about the tickling, were not crying, and appeared normal and relaxed. They hugged and kissed defendant good-bye that evening. Defendant denied that he had tickled or even touched the girls in the groin area.

The trial court found defendant guilty of two charges of battery for knowingly making physical contact of an insulting nature with his daughters. Although defendant had argued that his ex-wife, Hames, had put the girls up to testifying against him, the trial court concluded that there was no substantial evidence that the children's testimony was in any way suggested, altered or manufactured. The court stated that it decided the cause based upon the credibility of the witnesses. The court found that the children's testimony, based on their demeanor, articulation and manner, was compelling and that the ex-wife's bitterness had not tainted their testimony. While J.P. stated that defendant had accidentally touched her chest, the court remarked that the manner in which she demonstrated the manipulation of the doll was convincing beyond a reasonable doubt. Defendant appeals.

The first issue before this court is whether the trial court erred in permitting Donna Hames to repeat the hearsay statements of the girls under the exception of section 115—10 of the Code. That section provides in part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertain-

ing to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.) Defendant contends that section 115—10 is not applicable to the offense of battery because the sexual contact is not an element of the offense.

The State argues that defendant has waived this issue because he failed to raise it in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) Alternately, the State argues that the statute was properly applied in the battery prosecutions. Finally, the State argues that any such error was harmless because the girls themselves provided clear testimony against defendant. See *People v. Holveck* (1990), 141 Ill. 2d 84, 104.

■■ ■ Although the issue was thoroughly argued before the trial court, the law in this State requires a post-trial motion for the trial court to have an opportunity to correct any mistakes; hence, the issue is waived in the case at bar due to defendant's failure to file a post-trial motion. (*Enoch*, 122 Ill. 2d at 186-87.) Even if the issue is not waived, we believe the trial court properly overruled defendant's objection to Hames' testimony. Section 115—10 applies to a prosecution for any sexual act, including but not limited to those offenses where sexual conduct is an element of the offense. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13, 12—14, 12—15, 12—16.) Battery, as charged in this cause, requires a contact of an insulting nature. (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)(2).) We believe that sexual contact which is nonconsensual or with a child is of an insulting nature, and thus these charges of battery involve a prosecution for a sexual act. For the exception to the hearsay rule to be applied, the statute also requires that the act be an element of the offense which is the subject of the prosecution. An insulting contact is an element of the batteries with which defendant was charged. Battery does not require that the insulting contact be sexual, but only that the act be insulting. We believe that section 115—10 is broad enough to include the instant offenses. Hames testified to the girls' statements describing an act which was an element of battery; the hearsay consisted of the girls describing the act of an insulting nature. Therefore, defendant's objection to Hames' testimony was properly overruled based on section 115—10.

■■ Finally, the result of the testimony was harmless because the testimony of the girls was by itself clear and convincing without Hames' corroboration. Moreover, defendant's case was partially strengthened by Hames' testimony. Defendant maintained that the prosecution was initiated by his vindictive ex-wife, who would try all means to deny him his rights to visitation. Without her testimony in support of the prosecution,

defendant's theory of the case was weaker. Thus, any prejudice suffered by defendant on account of the overruling of his objection was slight.

■ Defendant also alleges he was not proved guilty beyond a reasonable doubt because there was no evidence that he knowingly committed the offense of battery. Accusations of sexual misconduct are "easily made, hard to be proved, and harder to be defended." (*People v. Nunes* (1964), 30 Ill. 2d 143, 146; *People v. Douglas* (1989), 183 Ill. App. 3d 241, 251.) However, a reviewing court will not reverse the trial court's judgment unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt regarding the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261; see *In re A.J.H.* (1991), 210 Ill. App. 3d 65, 70-71; *People v. Roy* (1990), 201 Ill. App. 3d 166, 185.

Defendant contends that no evidence was presented which could prove the essential elements of the charging instrument. (*People v. Rothermel* (1982), 88 Ill. 2d 541, 544; *People v. Austin* (1984), 123 Ill. App. 3d 788, 794.) Specifically, the information charged in count I that "said defendant without legal justification knowingly made physical contact of an insulting nature with [K.P.] in that he touched [K.P.] in the groin with his hand." Count II alleged identical language concerning J.P. Defendant contends that the element of knowledge was not proved beyond a reasonable doubt. (*People v. Miller* (1990), 199 Ill. App. 3d 603, 607; *People v. Barrington* (1973), 15 Ill. App. 3d 445, 446.) Defendant maintains that the prosecution did not prove that he acted with a conscious awareness that his conduct, wrestling and tickling, would be practically certain to cause contact of an insulting nature.

Defendant quotes the definition of "knowledge":

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." (Ill. Rev. Stat. 1989, ch. 38, par. 4—5.)

Defendant contends that there is no evidence showing that he was consciously aware that his conduct was practically certain to cause conduct of an insulting nature. Defendant argues that his lack of the wrongful

mental state may be inferred from the fact that the roughhousing, wrestling and tickling were initiated by the children.

■ Knowledge is ordinarily proved by circumstantial evidence, rather than by direct proof, and the State must present sufficient evidence from which an inference of knowledge can be made, as the inference must be based on established facts and not pyramided on an intervening inference. (*People v. Quiver* (1990), 205 Ill. App. 3d 1067, 1071.) Without proof of the mental state, a conviction cannot be sustained. (*A.J.H.*, 210 Ill. App. 3d at 71-72.) We note that while J.P. did use the word "accidentally" in her testimony, she was referring to defendant's brushing over her chest, and defendant in the case at bar was charged with touching the child's groin.

■ We believe that the trial court could draw an inference of knowledge from the manner in which the children held their hands over the crotch of the doll during their testimony. While the record cannot reflect with accuracy the manipulation of the doll, the record does suggest that the trial judge had a clear, objective view of the demonstration. The trial judge disagreed with both counsel concerning where the children were indicating while testifying with the doll. The manner in which the children were holding their hands could show that the hands remained on the crotch and that the fingers were grabbing rather than tickling in a glancing or brushing movement or that the hand passed over the groin accidentally. The fact that defendant kept his hand there or changed his finger movement from rotating to grabbing reasonably implies that he consciously knew he was making the contact which is insulting. Defendant did not contest that ordinarily a purposely placed hand on the crotch is insulting. Thus, the record does support a finding that a reasonable trier of fact could have found defendant guilty, and we must, therefore, affirm the conviction.

For the above reasons, the order of the trial court is affirmed.

Affirmed.

WOODWARD and UNVERZAGT, JJ., concur.