*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, For Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 1994 (First Financial Funding Corporation, Petitioner-Appellant, v. Edward J. Rosewell, Cook County Treasurer and *ex officio* County Collector, Respondent-Appellee).

First District (5th Division)   No. 1—97—3705

Opinion filed December 18, 1998.

Neal, Gerber & Eisenberg (Thomas J. McNulty and Jennifer L. Bluestein, of counsel), and Rodney C. Slutzky, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski, Elizabeth J. Reidy, Maureen E. Mulvenna, and Pamela Hughes, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:
On April 29, 1996, First Financial Funding Corporation (First

Financial) purchased the lien of the 1994 delinquent real estate taxes against a parcel of real estate at the annual Cook County tax sale. First Financial later filed a petition to declare the sale to be in error pursuant to the provisions of section 21—310 of the Property Tax Code (the Code) (35 ILCS 200/21—310 (West 1996)) because the property was owned by Northwestern University and was not subject to taxation. In addition, First Financial sought reimbursement with interest as provided by section 21—315(a) of the Property Tax Code. 35 ILCS 200/21—315(a) (West 1996).

The trial court granted the petition for a sale in error, but declined to award First Financial interest pursuant to section 21—315(b)(iv) of the Code. 35 ILCS 200/21—315(b)(iv) (West 1996). In so doing, the trial court relied upon its construction of the term "actual knowledge" as used in section 21—315(b)(iv), which precludes an award of interest where the tax purchaser has "actual knowledge" of the grounds for the sale in error prior to the tax sale. 35 ILCS 200/21—315(b)(iv) (West 1996). In denying First Financial interest, the trial court concluded that the failure to perform either a physical inspection of the property or a title inspection on the property "will not be excused where it can be shown that a reasonable inspection would have disclosed the grounds on which the sale in error is declared to be erroneous." First Financial filed a petition for reconsideration, which the trial court denied. On appeal, First Financial maintains that the trial court misconstrued the meaning of the phrase "actual knowledge" as used in section 21—315(b)(iv) and, as a result, erroneously determined that First Financial was not entitled to interest. We reverse.

First Financial is a corporation solely engaged in the business of purchasing delinquent real estate taxes. At the time of the annual tax sale at issue, First Financial had been engaged in this business for approximately 6½ years. On April 29, 1996, First Financial purchased the lien of delinquent 1994 real estate taxes on the property identified by permanent index number 17-10-204-007 (the property or the garage) for $701,527.24. That property is a parking garage on Ontario Street between Fairbanks and McClurg Court in Chicago in the vicinity of Northwestern University Hospital.

After the tax sale, First Financial's attorney conducted a title search, which revealed that the property was owned by Northwestern University. Northwestern University was granted a charter exemption by private law enacted by the General Assembly in 1855, excluding its property from taxation regardless of use. Consequently, First Financial filed a petition to vacate the sale, asking for an award of interest as provided by section 21—315(a) of the Code.

After the hearing on the petition to vacate the sale, which resulted in the denial of interest, First Financial filed a motion to reconsider. In support of that motion, First Financial offered the affidavit of Marshall Atlas, an officer and authorized agent of First Financial, in which Atlas stated that, based on his physical inspection of the property prior to the sale, he found no indication that the property was owned by Northwestern University or that the property was not subject to taxation. Atlas further stated that before the tax sale he had no knowledge of any kind as to the property's ownership or tax-exempt status, nor was he aware of any fact that should have alerted him to make further inquiry as to the property's ownership or tax-exempt status. In its response to the motion, the collector disclosed that a sign on the property bore the name of Northwestern University. So informed, First Financial requested leave to reopen its proofs, and the trial court heard testimony from Atlas regarding the sign.

Atlas testified that, prior to purchasing the tax lien on the property, he inspected the property by driving south and north on Fairbanks Court at its intersection with Ontario Street, without driving down Ontario. During his inspection of the property, Atlas did not stop his car and only viewed the property from his car as he drove. Atlas later learned that the garage's location is approximately 150 feet east of the intersection of Fairbanks Court and Ontario Street, facing Ontario Street.

Placing his actions in context, Atlas explained that First Financial was the successful bidder on approximately 500 real estate parcels during the tax sale at which it purchased the garage. First Financial bid on at least 50% of the total number of parcels purchased at that tax sale by all buyers, or approximately 14,000 parcels. Atlas physically inspected 75% of the parcels First Financial bid on during the tax sale. Atlas testified that he physically inspects a property prior to a tax sale in order to determine the property's type, location, value and condition.

Atlas also testified that in further preparation for the sale he obtained a computerized report from the Cook County treasurer's office containing information on the property. The report listed the property's assessed valuation and indicated that taxes on the property for the two years prior to the tax sale, the years 1992 and 1993, had been paid. The report also showed no assessee of record. Atlas further testified that he did not know at the time of the April 1996 tax sale that the property was owned by Northwestern University, that Northwestern University possessed a charter exemption, or the significance of a charter exemption. However, Atlas acknowledged that he had read the statute governing sales in error.

Atlas said that he conducted a second inspection of the garage and photographed the sign, which he described as being located on an interior wall of the parking garage and as measuring approximately two feet by two feet in diameter. Though Atlas denied having seen the sign during his initial inspection of the property prior to the tax sale, he acknowledged that, at that time, he only viewed the garage from the vantage point of his car on Fairbanks, not Ontario Street. However, Atlas contended that he would not have seen the sign even if he had viewed the garage from Ontario Street because trees and the sign's inconspicuous location obscured it.

The photographs, which are a part of the record on appeal, indicate that the sign, located on an interior wall of the parking garage, reads: "Northwestern University Lot 'D.' " Additional signage depicted in the photographs identifies the parking garage as a commercial enterprise. According to Atlas, the parking garage bore no indication of its connection with Northwestern University other than the signage he located, described, and photographed during his second inspection of the property. Claiming that he failed to see the sign during his initial inspection, Atlas testified that he did not know whether the sign identifying the parking garage as Northwestern University Parking Lot D was present when he initially inspected the property. However, Atlas admitted that, at the time, he did know that Northwestern Memorial Hospital is located in the vicinity of the parking garage.

■ Section 21—315(a) of the Property Tax Code provides that interest shall be paid in those instances referenced under section 21—310 of the Code. 35 ILCS 200/21—315(a) (West 1996). The ground for granting a sale in error in this case, the fact that the property is not subject to taxation, is one of those instances. Section 21—315(b) of the Code denies interest on refunds of the purchase price under four circumstances, one of which is "where the court determines that the tax purchaser had actual knowledge prior to the sale of the grounds on which the sale is declared to be erroneous." 35 ILCS 200/21—315(b)(iv) (West 1996).

On appeal, First Financial maintains the trial court misconstrued the meaning of the phrase "actual knowledge" and, as a result, erroneously determined that First Financial was not entitled to interest. First Financial suggests that the phrase "actual knowledge" contemplates deliberate and purposeful conduct on the part of the tax purchaser. First Financial also contends that the trial court failed to make the necessary findings of fact predicate to a determination of actual knowledge on the part of First Financial.

The collector counters that the definition of "actual knowledge" First Financial proffers is unworkable, is contrary to the plain

language of the statute, and is contrary to public policy. The collector emphasizes the trial court's role in making a determination of actual knowledge based upon the facts presented. The collector further argues that, rather than judicially imposing a duty of inspection upon prospective tax purchasers, the trial court merely stated the consequence, denial of interest, that befalls those who elect to inspect neither the title nor the property prior to purchase.

As the trial court correctly noted, the term "actual knowledge" is not defined in the Property Tax Code. Moreover, research to date suggests that the question as to the specific meaning of the phrase "actual knowledge" as used in section 21—315(b)(iv) is one of first impression. In addressing this question, we recognize that our concerns here are less epistemological than practical and that the problem presented is essentially one of proof.

■ Before turning to the issues before us, we emphasize that we review *de novo* as a question of law the trial court's construction of the term "actual knowledge." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996) (statutory construction is a question of law reviewed independent of and not deferential to trial court). However, we also note that section 21—315(b)(iv) requires the trial court to apply the construct "actual knowledge" to the facts of each particular case and to make a factual determination as to its existence. Accordingly, in keeping with the principles that govern our review, we shall not upset the factual determinations of the trial court unless those determinations are against the manifest weight of the evidence. *Gonet v. Chicago & North Western Transportation Co.*, 195 Ill. App. 3d 766, 776, 552 N.E.2d 1224, 1231 (1990).

■ Initially, we emphasize the principles of construction that guide us whenever we confront a question of statutory construction. The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454, 657 N.E.2d 997, 999 (1995). Because the language used by the legislature is the best indication of legislative intent, we must look first to the words of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91, 93 (1996). When the words used are ambiguous or the meaning of the statute unclear, we may consult legislative history as an aid to construction. *In re B.C.*, 176 Ill. 2d 536, 542-43, 680 N.E.2d 1355, 1359 (1997).

■ In keeping with these principles, our inquiry begins with the words of the statute. Section 21—315(b)(iv) provides that "[i]nterest on the refund to the owner of the certificate of purchase shall not be paid *** (iv) in any other case where the court determines that the tax purchaser had actual knowledge prior to the sale of the grounds on

which the sale is declared to be erroneous." 35 ILCS 200/21—315(b)(iv) (West 1996). Thus, the plain language of the statute denies interest to those who possess a particular kind of knowledge prior to the sale: actual knowledge of the grounds for the sale in error. Under the facts of this case, to be denied interest, First Financial must have possessed, prior to the sale, "actual knowledge" of the facts constituting the grounds for the sale in error: (1) Northwestern University's ownership of the garage; (2) Northwestern University's possession of a charter exemption; and (3) the effect of Northwestern's charter exemption on the property.

Fashioning a broad definition of "actual knowledge," the trial court concluded that "[a]s used in this statute a person will have actual knowledge if that person is shown to be conscious of having the means of knowledge, though he does not use those means, choosing to remain ignorant of the fact, or is negligent in not following up the inquiry which the known facts suggest." The trial court based its conclusion upon (1) the legislature's silence as to the meaning of "actual knowledge"; (2) a characterization of the statutory scheme as narrow and limiting; and (3) the discretionary nature of the court's function under the statute in determining whether "actual knowledge" exists.

The trial court determined that First Financial easily would have discovered by an inspection of the title records that title to the property was held by Northwestern University. It also determined that Atlas would have discovered the signage designating the property as Northwestern University Parking Lot D had he taken the time to get out of his automobile while performing his initial inspection. The trial court noted that the sign, once discovered, "should have put a reasonably[ ] prudent person on notice that Northwestern may have a title interest" and that "[f]urther inquiry would have disclosed Northwestern's actual interest." Accordingly, the trial court denied interest, declining to excuse First Financial's failure to perform a more thorough physical inspection of the property or to conduct a title inspection prior to the sale.

We do not agree with the trial court's expansive definition of "actual knowledge" or with the significance it attaches to the legislature's failure to define the phrase. The plain language of section 21—315(b)(iv) requires "actual knowledge" of the grounds for the sale in error. By its own terms, section 21—315(b)(iv) of the statute does not preclude an award of interest for what the tax purchaser may have, should have, or could have discovered. Nor does it require an inspection of title records.

■ Actual knowledge is distinct from constructive knowledge. See *People v. Monroe*, 118 Ill. 2d 298, 515 N.E.2d 42 (1987) (concluding

Drug Paraphernalia Control Act (Ill. Rev. Stat. 1985, ch. 56½, pars. 2101 through 2107) was unconstitutionally vague where definitional section required actual knowledge and penalty provision required only constructive knowledge); Black's Law Dictionary 33 (5th ed. 1979) (defining "actual" as something real in opposition to that which is constructive or speculative). In contrast to "actual knowledge," one is deemed to have constructive knowledge of such facts as one would have known by the exercise of reasonable care. *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 228-29, 639 N.E.2d 974, 977 (1994). The trial court's conclusion that the consciousness of having the means of knowledge is sufficient to establish the possession of actual knowledge as required by the statute ignores the distinction between constructive and actual knowledge and is at odds with the plain language of the statute.

■ We also do not agree with the trial court's interpretation of the statutory scheme that governs sales in error and the awarding of interest. The trial court's interpretation of the statutory scheme as narrow and limiting fails to acknowledge the distinction made in the Code between tax sale bidders and tax sale purchasers. The burden of title inspection imposed by the Code is imposed upon tax purchasers, not upon tax bidders prior to sale. See 35 ILCS 200/22—5 through 22—30 (West 1996) (prescribing the duties imposed upon a tax purchaser who seeks to perfect a tax deed title). Where a tax sale triggers an inquiry as to the ownership of realty, due diligence dictates that a thorough examination be made of the public records in the county in which the property is situated, particularly an examination of the property tax records. *Payne v. Williams*, 91 Ill. App. 3d 336, 341, 414 N.E.2d 836, 840 (1980). A tax purchaser is obliged to look at information contained in county tax and title records so that he may serve the notices required by the Revenue Act. *In re Application of County Treasurer*, 32 Ill. App. 3d 161, 164, 336 N.E.2d 167, 169 (1975). Thus, the statutory scheme governing tax sales does not suggest that a duty of inspection of title should be imposed upon tax bidders as a condition precedent to receipt of interest following a sale in error.

Nor does the policy behind the statutory scheme governing tax sales suggest that such a duty should be imposed prior to the sale. See *City of Bloomington v. John Allan Co.*, 18 Ill. App. 3d 569, 581, 310 N.E.2d 437, 446 (1974) (purpose behind statutory scheme governing certificate of purchase and tax deeds is "to encourage buyers at tax sales, increase the collection of taxes by governmental authorities, and to free land to re-enter the stream of commerce and bear its aliquot share of the tax burden" by providing a method for obtaining merchantable title). The legislature has designated specific circum-

stances under which a sale in error with interest shall be granted. We cannot judicially impose upon tax sale bidders the duty to discover errors in the tax sale process where the legislature has not done so. *People ex rel. Edgcomb v. Wolfe*, 226 Ill. App. 3d 995, 999, 589 N.E.2d 811, 814 (1992) ("court's role in interpreting a statute does not include annexing provisions to a statute").

The decisions of this court refusing to grant sales in error on grounds other than those contained in section 21—310 of the Code also do not support the trial court's construction of the statute or its findings in this case. On two occasions, separate panels of this court referenced the tax sale purchaser's failure to inspect the property and/or the records in the context of that purchaser's attempt to obtain a sale in error on grounds other than those provided by the statute. See *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for the Nonpayment of General Taxes and/or Special Assessments for the Year 1990 & Prior Years*, 285 Ill. App. 3d 518, 674 N.E.2d 123 (1996); *People ex rel. Edgcomb v. Wolfe*, 226 Ill. App. 3d 995, 589 N.E.2d 811 (1992). Neither decision addressed the conduct of a tax sale bidder prior to a tax sale that resulted in a sale in error authorized by statute. Consequently, neither decision imposed a duty of inspection upon tax sale bidders prior to the sale as a condition prerequisite to an award of interest on a sale in error provided for by statute.

■ We also are not persuaded that a broad definition of "actual knowledge" is required to fulfill legislative intent. The tax purchaser's mere denial of "actual knowledge" will not suffice where the collector comes forward with direct or circumstantial evidence suggesting that the tax purchaser did possess such knowledge. In other contexts, knowledge is typically proved by circumstantial evidence rather than direct proof. *Pfeifer v. Canyon Construction Co.*, 253 Ill. App. 3d 1017, 628 N.E.2d 746 (1993) (use of circumstantial evidence appropriate to determine whether gratuitous bailor had actual knowledge of defect in his chattel so as to establish liability for injury caused by defect); *People v. Pinta*, 210 Ill. App. 3d 1071, 1078, 569 N.E.2d 1255, 1260 (1991) (knowledge as element of crime charged ordinarily proved by circumstantial evidence).

"Knowledge," as the requisite mental state element of a crime, generally refers to an awareness on the part of the defendant of the existence of facts that make the defendant's conduct unlawful. *People v. Gean*, 143 Ill. 2d 281, 288, 573 N.E.2d 818, 822 (1991). In a criminal context, when knowledge is the mental state at issue, "the State must present sufficient evidence from which an inference of knowledge can be made, as the inference must be based on established facts and not

pyramided on an intervening inference." *Pinta*, 210 Ill. App. 3d at 1078, 569 N.E.2d at 1260. We see no reason why the method of proof should differ as to the question of "actual knowledge" presented in section 21—315(b) or how that method of proof would frustrate section 21—315(b)(iv) of the Code.

■ The trial court's definition of "actual knowledge," which required proof only that the tax purchaser had the means of obtaining knowledge, eliminated the factual evidentiary predicate that distinguishes "actual knowledge" from "constructive knowledge." Moreover, the record shows that the collector failed to come forward with direct evidence of "actual knowledge" or with facts sufficient to support the inference of "actual knowledge" on the part of First Financial. Consequently, the trial court's determination that interest should be denied was not based upon sufficient evidence of established facts from which the inference of "actual knowledge" could flow.

This failure of proof is evident from the trial court's determinations. The trial court determined that First Financial easily would have discovered by an inspection of the title records that title to the property was held by Northwestern University. The court also determined that Atlas would have discovered the signage designating the property as Northwestern University Parking Lot D had he taken the time to get out of his automobile while performing his initial inspection. Significantly, the court did not determine that the exterior of the building, as observed by Atlas, suggested a need to make further inquiry. No such evidence was presented or factual determinations made in this instance. The collector presented no evidence to suggest that Atlas saw the signage indicating the garage's affiliation with Northwestern and presented no evidence to suggest that the signage and location of the garage were sufficient to convey the property's tax status.

Moreover, the trial court accepted as true Atlas' affidavit and testimony that he did not see the sign that identified the garage as Northwestern University property prior to the sale, that he did not know the garage was owned by Northwestern University, that he did not know that Northwestern possessed a charter exemption, and that he did not know the effect of a charter exemption. For all of these reasons, the trial court's denial of interest in this instance was against the manifest weight of the evidence.

To summarize, we conclude that the trial court erred in defining the term "actual knowledge" as used in section 21—315(b)(iv) so broadly as to contemplate the existence of "actual knowledge" based solely upon the ability to obtain such knowledge. We further conclude that the trial court's determination that First Financial should be

denied interest under section 21—315(b)(iv) of the Code is against the manifest weight of the evidence presented.

Reversed and remanded.

HOURIHANE, P.J., and GREIMAN, J., concur.