2021 IL App (2d) 181057-U
No. 2-18-1057
Order filed February 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-2322 |
| LAWRENCE W. STENZEL, | ) ) | Honorable Michael W. Feetterer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly admitted seven-year-old's statement to a school social worker that defendant pushed her in the course of his physical altercation with another family member. The child was not subjected to coercion or suggestive questioning, and there was no evidence that she had a motive to fabricate or that anything occurred in the interval between the incident and the statement impacting its reliability.

¶ 2   Following a bench trial, defendant, Lawrence W. Stenzel, was convicted of two counts of domestic battery based on bodily harm (720 ILCS 5/12-3.2(a)(1) (West 2016)) and two counts of domestic battery based on physical contact of an insulting or provoking nature (*id.* § 2-3.2(a)(2)). The trial court merged the insulting-or-provoking-contact counts into the bodily-harm counts and

sentenced defendant to one year of conditional discharge. On appeal, defendant argues that the out-of-court statement made by one of the victims, R.B., a second-grader, to her school counselor, Colleen Black, should have been excluded at trial because that statement was neither timely nor made under reliable circumstances. We determine that the statement was properly admitted. Thus, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In 2016, defendant lived in a house with his niece, R.B.; his nephew, Reggie B.; and his mother's ex-husband, Roger Vicha. R.B. was the daughter of defendant's sister, who passed away in 2010. Although Vicha considered R.B. and Reggie to be his grandchildren, the record indicates that neither Vicha nor defendant considered themselves to have a stepfather/stepson relationship.

¶ 5        On Christmas night 2016, when R.B. was seven years old, Vicha and defendant got into a physical fight. Although R.B. was not in the vicinity of this fight, she was injured that evening by defendant. Defendant was charged with domestic battery based on the injuries Vicha and R.B. sustained.

¶ 6        Before defendant's trial began, the State filed a motion *in limine*, seeking to present at trial statements R.B. made, at separate times, to Black and McHenry County Sheriff's Deputy Luke Zdanowski.

¶ 7        At the hearing on the motion, Black testified that she works as a social worker at the grade school that R.B. attends. Because the school is small and Black familiarizes herself with all the students as soon as they enter kindergarten, Black had a friendly rapport with R.B., who was in second grade during the 2016 to 2017 school year.

¶ 8        Black testified that she was familiar with an incident involving R.B. that occurred on Christmas Day 2016. Asked how she first learned of that incident, Black replied that "this

happened over Christmas break." Vicha came to the school and informed Black that the police were involved in an incident at the family's house. Because Vicha was concerned about R.B.'s well-being as it related to that incident, he asked Black, who has a master's degree in social work, to talk to R.B. and assess how she was doing.

¶ 9     Black was unsure of the precise date that Vicha spoke with her, but she recalled speaking to R.B. later that same day about the incident. Black pulled R.B. out of class at an appropriate time and walked with her to Black's office. While just Black and R.B. were in the office, Black told R.B. that Vicha had stopped by the school and approved of Black talking to her. Black told R.B. that she knew about the incident at R.B.'s house and that R.B. was there when it happened. Black asked R.B. how she was feeling and if there was anything R.B. wished to share with Black. Black assured R.B. that it was "nothing big" and that she just wanted to make sure R.B. was alright.

¶ 10     R.B. told Black that defendant had been drinking and Vicha had been sleeping when the altercation between defendant and Vicha happened. R.B. also shared that defendant had pushed her. Although R.B. was "[p]retty matter of fact about the information she shared," Black indicated that R.B. appeared "nervous" about the fact that this had happened in her home and "bothered" by sharing that defendant had been drinking. Black theorized that R.B. was concerned about the "stability" in her home and "just if they're all safe."

¶ 11     The entire conversation between Black and R.B. lasted approximately 15 minutes. When it ended, Black told R.B. that they could talk later if she wished. R.B. told Black that she would let Black know if she needed to talk. R.B. never talked to Black about the incident again.

¶ 12     Deputy Zdanowski testified that, on December 25, 2016, he was dispatched to Vicha's residence. After a brief investigation, Deputy Zdanowski arrested defendant. After transporting defendant to the police station, Deputy Zdanowski returned to the home to interview Vicha and

R.B. Deputy Zdanowski observed a band-aid on R.B.'s face and asked her how she got hurt. R.B. replied that she could not remember. Vicha then stated to R.B. that she "ha[d] to be honest with the police." After this remark, R.B. told Deputy Zdanowski that defendant had punched her and pushed her down on the concrete floor in the basement.

¶ 13　The trial court granted the State's motion as to the statement R.B. made to Black. In doing so, the court considered the time, content, and circumstances surrounding the making of that statement. Though Black was unable to identify the precise date on which R.B. made her statement, the court inferred that it was made "shortly after the kids returned to school from Christmas break." The court also noted that Black "ask[ed] open-ended questions" and that "just the two of them [were] in the room." Given these facts, the court found that there were sufficient safeguards of reliability to admit the statement to Black. However, the court denied the State's motion as to the statement R.B. made to Deputy Zdanowski.

¶ 14　At trial, Vicha testified that defendant and Reggie had been drinking on Christmas Day 2016. At about 6:30 p.m., Vicha took R.B. to the basement, which is where defendant slept and R.B. kept her arts and crafts supplies. Vicha then went to bed.

¶ 15　At about 7:30 p.m., defendant "burst" into Vicha's room. Defendant grabbed Vicha by the throat and repeatedly hit Vicha on the top of his head. Reggie broke up the fight, and Vicha called 911. When the police arrived, they escorted defendant and Reggie to the police department. After the police left, R.B. asked Vicha for a band-aid, as she had a small cut on her cheek. R.B., who had remained in the basement during most of the fight, was quiet and upset.

¶ 16　Deputy Zdanowski testified that "there was a lot going on" when he arrived at the scene and that defendant was "clearly agitated." After escorting defendant and Reggie to the police department, the police returned to the house later that night and took photographs of the injuries

Vicha and R.B. sustained. Although the photograph of R.B. revealed that R.B. had a small superficial abrasion underneath her right eye, Deputy Zdanowski indicated that the picture did not depict exactly what he saw. Rather, Deputy Zdanowski testified that there was a scratch underneath R.B.'s right eye.

¶ 17   At the outset of her testimony, nine-year-old R.B. assured the trial court that she knew the difference between the truth and a lie, and she promised the court that she would tell the truth. She testified that she was in the basement when she heard defendant and Vicha fighting. At some point, after the fight started, defendant came down to the basement. Using one hand, defendant grabbed R.B. by the back of her head and pushed her down onto the cement floor. After that, R.B.'s face was achy. She felt sad because she did not expect that defendant, a member of her family, would do that to her. Defendant went back upstairs, and R.B. remained in the basement. Later, R.B. spoke to the police, Black, and Lisa Vargas, a social worker with the Department of Children and Family Services (DCFS).

¶ 18   Vargas testified that she talked to R.B. on December 26, 2016. Vargas met with R.B. at her home, and no one else was in the room when they spoke. Vargas observed a small cut underneath R.B.'s right eye. R.B. was very comfortable talking to Vargas and never hesitated in answering Vargas's questions. Vargas spoke with R.B. for about 15 minutes.

¶ 19   Later that day, Vargas spoke with others, including Vicha and defendant. Her conversation with defendant took place in a DCFS field office. Defendant told Vargas that "he had accidentally elbowed [R.B.] in the back of the head," which caused R.B. to hit her face on the couch she was sitting on. Defendant explained that the accident happened in the basement when he and Reggie were both reaching for the same beer. Based on everything Vargas learned, she concluded that credible evidence showed abuse by defendant.

¶ 20    Black, who has a master's degree in social work and training in talking to children who have experienced trauma, testified consistently with her testimony at the previous hearing. She indicated that she spoke to R.B. in January 2017 on the day after Christmas break ended, and she reiterated how she came to speak to R.B. While in Black's office, which she described as a welcoming and private environment, Black and R.B. sat at a table, approximately three feet across from each other. Black told R.B. that she knew something had happened at her home over Christmas break, and she asked R.B. if she wanted to talk about it. R.B., who was not reluctant to share what had happened, said she did want to talk. R.B. told Black that defendant was drunk and beat up Vicha. R.B. also told Black that defendant pushed her down by the back of her head. Although Black described R.B. as "fidgety," Black believed that this had more to do with the "context of the situation *** making her uncomfortable."

¶ 21    Angela Steadman, defendant's sister, and Lawrence Stenzel, Sr., defendant's father, testified that Vicha spoke to them at the home the day after the altercation. Both Steadman and Stenzel, Sr., testified that Vicha no longer wanted to be responsible for R.B. According to Stenzel, Sr., Vicha wanted Steadman to raise R.B., and Vicha told Stenzel, Sr., that he would take full responsibility for the physical altercation.

¶ 22    Defendant testified that he was upset on Christmas Day 2016 because Vicha allowed Reggie, who was only 17 years old, to drink beer. While sitting on a couch in the basement with R.B., who was lying on the couch on her stomach playing with her tablet, defendant reached for a beer that was on the floor by the arm of the couch. Reggie, who was also reaching for that beer, pushed defendant, and defendant, who almost fell on R.B., accidentally elbowed her. Defendant, whose back was to R.B. at the time of the impact, believed that his elbow struck R.B. on the back of the head. Reggie then went upstairs, and defendant followed. Vicha intervened, pushed

defendant, and then kneeled on defendant as defendant was lying on the floor. Defendant began hitting Vicha, trying to get Vicha off him. Reggie, who was much bigger than either defendant or Vicha, pulled Vicha off defendant and struck defendant on the forehead with an open hand. Defendant then went back downstairs. R.B., whom defendant described as confused, was still playing on her tablet. Defendant indicated that, because of Vicha kneeling on him, he suffered a rib fracture.

¶ 23    The trial court found defendant guilty of all four counts of domestic battery. Regarding the domestic battery counts concerning R.B., the court found that R.B. was "a very articulate, soft spoken, thoughtful nine-year old kid." The court credited R.B.'s version of events over defendant's, finding that, "for reasons that no one really knows, but it certainly wasn't provoked," defendant grabbed her by the back of the head and threw her to the floor. The court also determined that, because of defendant's actions, R.B. suffered a scrape to her cheek.

¶ 24    After the trial court sentenced defendant, he moved the court to reconsider, arguing, among other things, that the out-of-court statement R.B. made to Black should have been excluded because the time, content, and circumstances of the statement indicated that the statement was unreliable. The court denied the motion, finding that "[a] large part of the verdict was based upon the credibility of the witnesses, which favored the State's witnesses and cut against [defendant] and his witnesses." Given all of the evidence, including the photographs showing the injuries to the victims, the court found that defendant's motion was not well founded.

¶ 25    This timely appealed followed.

¶ 26                                    II. ANALYSIS

¶ 27    At issue in this appeal is whether the trial court erred in granting the State's motion to admit R.B.'s out-of-court hearsay statement to Black. The court admitted R.B.'s statement pursuant to

section 115-10 of the Code of Criminal Procedure of 2012 (Code) (725 ILCS 5/115-10 (West 2016)). Section 115-10 provides an exception to the hearsay bar in cases involving certain crimes, including domestic battery of a child. *Id.* § 115-10(a). Section 115-10(a)(2) of the Code allows the admission of:

> "testimony of an out of court statement made by the victim [under the age of 13] describing any complaint of [a physical or sexual act perpetrated upon or against that victim] or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." *Id.* § 115-10(a)(2).

Section 115-10(b)(1) of the Code further provides that the hearsay testimony is admissible if "[t]he court finds in a hearing *** that the time, content, and circumstances of the statement provide sufficient safeguards of reliability," and the child testifies at the hearing. *Id.* § 115-10(b)(1), (b)(2)(A).

¶ 28    "In determining the reliability of [a] child's hearsay statement, relevant factors include, but are not limited to, (1) the spontaneity and consistent repetition of the statement; (2) the mental state of the child giving the statement; (3) the use of terminology not expected in a child of comparable age; and (4) the lack of motive to fabricate." *People v. Bowen*, 183 Ill. 2d 103, 120 (1998). The trial court must evaluate the totality of the circumstances surrounding the child's making of the hearsay statement. *People v. Burgund*, 2016 IL App (5th) 130119, ¶ 242. " '[C]ases which involve the determination of the reliability of section 115-10 statements are fact specific,' and the holdings in each case are *sui generis*." *Id.* ¶ 243 (quoting *People v. Edwards*, 224 Ill. App. 3d 1017, 1026 (1992)).

¶ 29    In analyzing the trial court's ruling under section 115-10 of the Code, our focus is only on the testimony admitted at the pretrial hearing rather than the evidence presented at trial. *People v.*

*Stull*, 2014 IL App (4th) 120704, ¶ 85.  The trial court has wide discretion in determining the admissibility of hearsay statements pursuant to section 115-10 of the Code, and we will not disturb the trial court's finding absent an abuse of that discretion.  *People v. Bowen*, 183 Ill. 2d 103, 120 (1998).  A trial court abuses its discretion when " '[its] ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view.' "  *People v. Sharp*, 391 Ill. App. 3d 947, 955 (2009) (quoting *People v. Robertson*, 312 Ill. App. 3d 467, 469 (2000)).

¶ 30     Here, we cannot conclude that the trial court abused its discretion in admitting R.B.'s out-of-court statement to Black.  Black's testimony at the pretrial hearing, which was consistent with her trial testimony, revealed that the time, content, and circumstances of R.B.'s statement to Black provided sufficient safeguards of reliability.  Specifically, the evidence revealed that R.B. was not subject to suggestive questioning when she made her statement to Black.  *Burgundy*, 2016 IL App (5th) 130119, ¶ 251.  That is, Black did not ask R.B. any pointed questions about the incident, opting instead to ask simply whether R.B. wanted to talk about the incident.  In so asking, Black assured R.B. that she was doing so only because she was concerned about R.B.'s well-being.  R.B., who said that she did want to talk about the incident, relayed to Black, without any prompting, that defendant pushed her down on the floor by the back of her head.

¶ 31     Additionally, nothing suggested that the environment in which R.B. made the statement to Black was unduly coercive.  *Id.* at 252.  Black, who indicated that she and R.B. had a good rapport and had known each other for a few years, testified that she pulled R.B. out of class at an appropriate time and walked with her to Black's office.  The relatively short 15-minute conversation Black had with R.B. occurred in Black's office, and only R.B. and Black were present.  Although R.B. appeared nervous during the conversation, Black, who has experience talking to children and familiarity with R.B., determined that the nervousness had more to do with

R.B.'s concerns about the stability of her home life. Moreover, nothing suggested that R.B. was motivated to fabricate an allegation that defendant battered her. Indeed, R.B.'s apparent concerns about keeping her home life intact suggested the exact opposite.

¶ 32    Defendant argues that R.B.'s statement should have been excluded because it was made too long—defendant estimates two or three weeks—after the battery happened and only after Vicha alerted the school about the incident.

¶ 33    We disagree with defendant that a two or three-week delay warranted excluding the statement. Although, as indicated, each case must be evaluated based on its unique facts, we note that courts have determined that delays longer than the one here did not render a child's out-of-court statement to another unreliable. See, *e.g.*, *Bowen*, 183 Ill. 2d at 120 (three-year delay); *People v. Anderson*, 225 Ill. App. 3d 636, 649 (1992) (one-month delay); *Edwards*, 224 Ill. App. 3d at 1031 (three-month delay). Moreover, courts have found that the mere fact that there was a delay between the date of the incident and the child advising another about it does not alone diminish the reliability of the child's out-of-court statement. *People v. Deavers*, 220 Ill. App. 3d 1057, 1069 (1991). Rather than focusing on the delay, courts should focus "on events that may have occurred during the time lapse in question, whatever its duration may have been, that could adversely affect the statement's reliability." *Id.*

¶ 34    On this point, defendant argues that the reliability of R.B.'s statement to Black is questionable because R.B. continued to reside with Vicha after the incident and Vicha initiated the conversation between R.B. and Black by telling the school what had happened. We disagree. There is no evidence in the record of any event occurring between the incident and the statement that could have adversely affected the statement's reliability. R.B. apparently continued to reside with Vicha after the incident, but there is nothing in the record to suggest that R.B. and Vicha

talked about the incident or that Vicha in any way coached R.B. about what to say about the incident. Moreover, although Vicha's alerting Black about the incident ultimately lead to R.B. making the statement to Black, nothing indicates that Vicha did so because he had told R.B. what to say rather than because, as he claimed to Black, he was concerned about R.B.'s well-being. Vicha's stated intentions seemed genuine in view of the evidence at trial that (1) R.B. had been questioned by the police and Vargas; (2) according to Steadman and Stenzel, Sr., discussions were had in R.B.'s home about R.B. going to live with other family members; and (3) Black believed that R.B. was very concerned about the stability of her home life. Without any evidence that R.B. was encouraged to fabricate an allegation or was coached about what to say regarding defendant battering her, we simply cannot conclude that the two or three-week interval during which R.B. remained under Vicha's control warranted excluding R.B.'s out-of-court statement to Black. See *People v. C.H.*, 237 Ill. App. 3d 462, 470 (1992) (child's out-of-court statement about sexual abuse not unreliable without evidence indicating that mother talked to child before child spoke to authorities and encouraged child to fabricate claims of sexual abuse).

¶ 35 Defendant also argues that *People v. Zwart*, 151 Ill. 2d 37 (1992), warrants a different conclusion here. There, our supreme court determined that the three-year-old victim's out-of-court statements about a sexual assault should have been excluded at the defendant's trial. *Id.* at 46. The court reasoned that, even though the five-week delay in making the statements did not alone require that the statements be excluded, that delay, when considered in light of the victim's extremely young age, her initial denial of the assault, the substantial adult intervention preceding the making of the statements, and the victim's unavailability to testify at trial, did warrant excluding the statements. *Id.* at 44-46.

¶ 36    We find *Zwart* unpersuasive here because we are not faced with similar circumstances.  For example, R.B. was older than the victim in *Zwart*, her statement to Black was made less than five weeks after the incident, and she testified, and was subject to cross-examination, at defendant's trial.  Although, like in *Zwart*, R.B. talked to at least Deputy Zdanowski and Vargas before she spoke to Black, nothing suggested that these discussions were substantial or coaxing in nature.  See *id.* at 40 (victim questioned by, among others, counselor that victim met during five-day special program for evaluating sexual abuse cases involving children).  Moreover, although Deputy Zdanowski testified at the pretrial hearing that R.B. initially told him that she could not remember how she got the cut underneath her right eye until Vicha told R.B. that she "ha[d] to be honest with the police," this does not require exclusion of R.B.'s statement.  R.B. was questioned by Deputy Zdanowski soon after a very chaotic incident in her home, and unlike in *Zwart*, R.B. never denied that she was battered or that defendant was the one who harmed her.

¶ 37    Simply put, the time, content, and circumstances of R.B.'s statement to Black were such that the trial court did not abuse its discretion in admitting them pursuant to section 115-10 of the Code.  Moreover, even if the admission of the statement were error, such error was harmless, as R.B.'s credible testimony, in addition to the other testimony and the photograph taken of R.B.'s injury, was enough to establish defendant's guilt.  See *People v. Pinta*, 210 Ill. App. 3d 1071, 1076 (1991) (admission of out-of-court statements minor victims made to their mother was harmless because victims' testimony alone was sufficient to establish the defendant's guilt).

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 40    Affirmed.